FILED
DES MOINES, IOWA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
SOUTHERN DIVISION

02 MAY 14 AM II: 05

U.S. DIST COURT
SOUTHERN DISTRICT OF IA

| | |
|---|---|
| BANDAG, INC.,<br><br>           **Plaintiff**,<br><br>    v.<br><br>MICHELIN RETREAD TECHNOLOGIES,<br>INCORPORATED, AND MICHELIN NORTH<br>AMERICA, INCORPORATED,<br><br>           **Defendants**.<br><br>MICHELIN RETREAD TECHNOLOGIES,<br>INCORPORATED, AND MICHELIN NORTH<br>AMERICA, INCORPORATED,<br><br>           **Counterclaimants**,<br><br>    v.<br><br>BANDAG, INC.,<br><br>           **Counterdefendant**,<br><br>    and<br><br>BRIDGESTONE/FIRESTONE, INC.,<br><br>           **Third-Party Defendant**. | Civil Action No. 4-02-CV-40204<br><br>**BRIDGESTONE/FIRESTONE,<br>INC.'S RESISTANCE TO<br>MICHELIN'S MOTION TO<br>EXCLUDE WITNESS TERRY<br>SOLVEDT** |

Michelin's motion to exclude the testimony of Terry Solvedt, Senior Vice President of

Operations at Ruan Transportation Management Systems ("Ruan"), should be denied.  Michelin

orally moved to exclude Mr. Solvedt as a witness on Friday, May 10, 2002, more than two weeks

after BFS identified him on BFS's final witness list, and *after* BFS had informed the jury in *voir

dire* that it intends to call Mr. Solvedt in its case-in-chief.

The *sole* basis for Michelin's motion -- that Bridgestone/Firestone, Inc. ("BFS") failed to

timely disclose Mr. Solvedt as a witness -- is unfounded.  In accordance with the Court's pretrial

deadlines, BFS disclosed Mr. Solvedt on its final witness list on April 25, 2002 (attached hereto



as Exhibit A) -- more than two weeks *before* Michelin moved to exclude his testimony.  On April 29, 2002, BFS submitted and served upon Michelin its "will call/may call" final witness list pursuant to Section III.C. of Final Pretrial Order, again identifying Mr. Solvedt as a trial witness.  (*See* Proposed Order on Final Pretrial Conference (Exhibit B herein.)  Because Michelin can depose Mr. Solvedt before he testifies in this case pursuant to procedures previously stipulated to among the parties, Michelin will suffer absolutely no prejudice by allowing him to testify.  Conversely, because Michelin delayed bringing its motion until after BFS identified Mr. Solvedt as one of its witnesses to the jury during *voir dire*, BFS will suffer considerable prejudice if his testimony is excluded.  For these reasons, as set forth more fully below, the Court should deny Michelin's motion and allow the jury to hear Mr. Solvedt's testimony.

## FACTUAL BACKGROUND

Mr. Solvedt is a Senior Vice President of Operations at Ruan, a longstanding mutual customer of BFS, Bandag, and Michelin.  Each of the parties provides tires and services to Ruan's national trucking fleet.  Michelin sells its new tires to Ruan (and also leases equipment from Ruan), and is well aware that BFS and Bandag work together to provide integrated tire management services to Ruan.  In response to Michelin interrogatories over a year ago in April 2001 (before last year's preliminary injunction hearing), both BFS and Bandag identified Ruan as a fleet customer which has requested that BFS and Bandag work jointly to lower Ruan's running costs.  (*See* BFS Answers to Michelin's First Set of Interrogs., attached as Exhibit C, at Nos. 4, 9, 11; *see also* Bandag's Resps. to Michelin's Third Set of Interrogs., attached as Exhibit D at Nos. 3, 8.)  Although Michelin represented to the Court in its motion to exclude that it had never seen Terry Solvedt's name in any BFS or Bandag trial exhibit, *Michelin's own exhibits* identify

Mr. Solvedt *by name* as one of the persons most knowledgeable about BFS's and Bandag's joint

efforts with Ruan. (*See* Exhibit D at No. 3.)  Specifically, Michelin Trial Exhibit 4651 (a

Bandag interrogatory response) includes the following information:

> As it had done with Michelin in the 1990s, Bandag has cooperated
> with Bridgestone in many ways over the years.  This cooperation
> has included, without limitation:
>
> a.  At the request of Ryder, Ruan and other mutual dealer and fleet
> customers, Bandag and Bridgestone continue to work together to
> offer integrated tire management services for the benefit of the
> fleet.  The products and services that Bandag and Bridgestone offer
> these accounts are similar to the vertically integrated offerings by
> Michelin and Goodyear. . . *Persons most knowledgeable about
> the Ruan account include:* Art Rivera of Bandag, Paul Carlson of
> Bridgestone, and Chad Johnson, *Terry Solvedt of Ruan*.

(Exhibit D at No. 3 (emphasis added).)

The subject of Ruan's new and retread tire purchases has also come up repeatedly

throughout pretrial discovery.  By way of example, witnesses for each of the three parties have

testified about Ruan in depositions.  (*See e.g.*, Dep. of R. Stogner at 108-11 attached as

Exhibit E; Dep. of W. Barfield at 120-22 attached as Exhibit F; Dep. of M. Carver at 258-59

attached as Exhibit G; Dep. of P. Manzo at 289-91 attached as Exhibit H.)

Months ago, the parties recognized the possibility that new, or "surprise," witnesses could

be disclosed on witness lists, and reached a stipulated agreement to meet that contingency.

Specifically, the parties agreed to a procedure for depositions of witnesses who had not

previously testified.  Pursuant to this agreement, the parties have conducted approximately six

depositions after final witness lists were exchanged on April 25, 2002, and plan to conduct at

least several more during trial.  (For example, depositions of Michelin non-party witnesses Rick

Volk (Oliver Tire) and Bruce Stockton (fleet customer CFI) are currently set for June 7, 2002

and an as yet undetermined date in June 2002 in Findlay, Ohio and Joplin, Missouri, respectively.)

On March 26, 2002, in accordance with the Court's Order, the parties exchanged their initial trial witness lists. Michelin's list contained 87 witnesses, including 16 "surprise" witnesses who had yet to testify in this case. (BFS's witness list, by contrast, disclosed only two witnesses who had not yet been identified in discovery or had not testified.) On its list, BFS, like all other parties, specifically reserved "the right to supplement this witness list prior to trial." (*See* Trial Witness List at Exhibit I.)

Throughout this case, all parties have been sensitive to relationships with customers in determining whether to call particular witnesses at trial and at hearings. At the time this case was set to be tried in Davenport, BFS had determined not to impose a burden upon Mr. Solvedt, or his employer Ruan, by subjecting Mr. Solvedt to the expense and inconvenience of travelling more than 150 miles to be a witness in this case. For those reasons, BFS in good faith did not include Mr. Solvedt on its initial trial witness list.[1]

On April 16, 2002, however, the Court moved the trial of this case from Davenport to Des Moines, where Mr. Solvedt lives and works. As a result, BFS determined that it could feasibly call Mr. Solvedt without significantly inconveniencing him or his employer. Thus, on April 25, 2002 (in accordance with the Southern District of Iowa's standing pretrial order), BFS disclosed Mr. Solvedt on its final witness list. (*See* Exhibit A.) BFS served this list, via facsimile and overnight mail, on each of the four law firms representing Michelin. The following day, at the final pretrial conference, the Court inquired as to whether there were any

---

[1] Even if BFS had been willing to compel Mr. Solvedt to testify involuntarily, BFS also believed in good faith at the time that Mr. Solvedt was outside of the subpoena range of the Davenport courthouse.

issues regarding "surprise witnesses," on the parties' final witness lists.  Michelin, with its

counsel in possession of BFS's final pretrial witness list, raised no objections to any witness,

including Mr. Solvedt and responded "We got that worked out." (*See* Tr. of Final Pretrial

Conference, attached as Exhibit J at 8:14-19.)  On April 29, 2002, in accordance with the Court's

instructions, BFS served an additional trial witness list with its "will call/may call" witnesses in

compliance with Paragraph III.C. of the Court's Final Pretrial Order, and again listed Mr. Solvedt

as a trial witness. (*See* Exhibit B.)  Again, Michelin raised no objection.

At *voir dire* on May 3, 2002, BFS's counsel told the jury that BFS would call Mr. Solvedt

as one of its witnesses, and pointed out that Mr. Solvedt worked for Ruan (which is

headquartered in Des Moines).  BFS's counsel inquired as to whether any jurors knew

Mr. Solvedt, the only Iowa resident among BFS's witnesses disclosed in *voir dire*.  Even then,

Michelin sat silently.  At the conclusion of motion *in limine* arguments the following day,

Michelin counsel informed BFS's counsel that Michelin may have "an issue" with BFS calling

Mr. Solvedt.  BFS assured Michelin's counsel that Mr. Solvedt would be available for deposition

here in Des Moines pursuant to the parties' stipulated procedures.  BFS's counsel noted that any

deposition could easily be scheduled and concluded before BFS's case-in-chief begins, which

appears to be at least a month from now.  Thereafter, Michelin waited to raise its further

objection to Mr. Solvedt until May 10, 2002, the last court day before opening statements and

evidence, and more than two weeks after BFS had properly disclosed Mr. Solvedt as a trial

witness.

## ARGUMENT

There is simply no basis, under the facts or the law, to preclude Mr. Solvedt's testimony

from trial.  As set forth above, BFS fully complied with the Court's rulings and deadlines for

disclosing pretrial witnesses.  Moreover, it would be extremely prejudicial to BFS to sustain

Michelin's eleventh-hour objection, which it failed to raise until after BFS informed the jury

during *voir dire* of its intention to call Mr. Solvedt.  *See United States v. Jones*, 266 F.3d 804,

813 (8th Cir. 2001) (witness who *was mentioned as a potential witness during voir dire* should

be permitted to testify despite untimely disclosure of him as a potential witness) (emphasis

added).

      Even assuming *arguendo* that BFS did not timely disclose Mr. Solvedt, and that Michelin

timely objected, exclusion of Mr. Solvedt's testimony would still be inappropriate under

well-established Eighth Circuit law.  Pursuant to *Patterson v. F. W. Woolworth Co.*, this Court

should analyze four factors in determining whether a late-disclosed witness should be precluded

from testifying:  (1) the reason for failing to name the witness; (2) the importance of the witness's

testimony; (3) the opposing party's need for time to prepare for the testimony; and (4) whether a

continuance would be useful.  *Patterson*, 786 F.2d 874, 879 (8th Cir. 1986); *see also Citizens of*

*Batesville, Arkansas v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1995); *see also Mills v. Des*

*Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir. 1989) (*"the use of an undisclosed witness*

*should seldom be barred unless bad faith is involved.*") (emphasis added).  Each of these factors

militates strongly in favor of allowing BFS to call Mr. Solvedt as a witness.

      First, BFS had valid reasons for not identifying Mr. Solvedt as a trial witness until after

the Court moved the trial from Davenport to Des Moines.  *See Patterson*, 786 F.2d at 879 (fact

that witness not named until circumstances changed provided valid reason for failure to name the

witness in a manner complying with the pretrial order); *Citizens of Batesville,* 16 F.3d at 967

(allowing testimony of five witnesses revealed *after* final pretrial conference because there was

no evidence of bad faith or intentional late disclosure).  Ruan is a "cradle-to-grave" customer

which uses BFS new tires and Bandag retreads, and which requests that BFS (and previously,

Michelin) work with its retread provider (Bandag) to provide solutions for the fleets' tire needs.

Because Ruan is a valued customer which is understandably reluctant to be "dragged into" this

case, BFS had determined not to jeopardize its relationship with Ruan by subpoenaing one of its

representatives to travel more than 150 miles to testify in a matter involving three of Ruan's

principal tire suppliers.  Once the Court, at Michelin's request, moved the trial to Des Moines,

these concerns were significantly reduced and BFS promptly added Mr. Solvedt to its final

witness list.

Second, there can be no legitimate question that Mr. Solvedt's testimony is critically

relevant to this case.  In ruling on summary judgment, the Court held that one of the issues of

material fact to be determined at trial is "*whether the alleged concerted action [between BFS*

*and Bandag] was for the purpose and had the effect of reducing retreading alternatives*

*available to the consumer trucking fleets.*"  (*See* Apr. 16, 2002 Order, attached as Exhibit K, at

7.)  The Court's finding is in line with the oft-cited maxim that the antitrust laws exist to protect

competition, not competitors like Michelin.  *See Brown Shoe Co. v. United States*, 370 U.S. 294,

320 (1962).  Mr. Solvedt, as a representative of one of the largest fleets where BFS and Bandag

work together to provide integrated cradle-to-grave tire services, is in a unique position to assess

the competitive impact of cooperation between BFS and Bandag.  As the Court is aware,

Michelin argues that any and all cooperation between BFS and Bandag is inherently

anticompetitive.  Mr. Solvedt's testimony will be invaluable to the jury in assessing the validity

of Michelin's contention.  The jury is entitled to hear the critical testimony of a non-party fleet

customer on that subject, and Michelin is entitled to meet that evidence either in its own

case-in-chief or in cross-examination of Mr. Solvedt.  Michelin's attempt to exclude Mr. Solvedt

would deprive the jury of valuable testimony, and is not an appropriate solution for Michelin's problems with the substance of Mr. Solvedt's testimony and Michelin's claim of "surprise."

Third, Michelin will suffer absolutely no prejudice if Mr. Solvedt is allowed to testify at trial.[2] BFS has advised Michelin that Mr. Solvedt is available to give his deposition in advance of his testimony. Given that Mr. Solvedt is not likely to testify for at least several weeks, and likely more than a month from now, Michelin has plenty of time to depose him, here in Des Moines, well in advance of his testimony.[3] *See Harrop v. Ingersoll-Rand*, No. 92 C 2569, 1993 WL 45856 at *1 (N.D. Ill. Feb. 19, 1993) (despite defendant's disclosure of witness after close of discovery in violation of pretrial order, witness could nonetheless testify because plaintiff had ample opportunity to depose him). There is simply no reason why one of the numerous attorneys representing Michelin cannot depose Mr. Solvedt in the next few weeks, particularly with the trial schedule the Court has imposed here, with Fridays off and trial concluding at 3:00 p.m. each afternoon. *See Dabney v. Montgomery Ward & Co., Inc.*, 692 F.2d 49, 52 (8th Cir. 1982) (no prejudice to plaintiff when she ignored defendant's offer to depose late disclosed witness; any one of the three members of the law firm representing plaintiff could have deposed the witness and investigated any other witnesses stemming from the late disclosed witness). Mr. Solvedt's

---

[2] In moving to exclude Mr. Solvedt's testimony, Michelin counsel argued that Michelin was prejudiced by the fact that Ruan was a Des Moines company, while the fleet witnesses testifying on Michelin's behalf are from other parts of the country. This claimed "prejudice" however, has absolutely nothing to do with the timeliness of BFS's disclosure of Mr. Solvedt as a trial witness. Moreover, Michelin is the party who moved the Court to transfer the venue of this case from Davenport to Des Moines, and thus cannot argue that it is prejudiced by Ruan's presence in Des Moines.

[3] By contrast, BFS will be able to depose only a fraction of the *16 surprise witnesses* on Michelin's witness list, several of whom Michelin failed to identify in an interrogatory response regarding potential trial witnesses. Indeed, due to Michelin's witnesses' unavailability, *BFS and Bandag have been required to wait until June -- during the presentation of Michelin's case-in-chief -- to depose two of Michelin's surprise witnesses.* Unlike the deposition of Mr. Solvedt, these depositions will take place in other parts of the country rather than right here in Des Moines, further demonstrating the lack of any prejudice to Michelin if Mr. Solvedt is allowed to testify.

entire trial testimony is expected to be less than a half hour in duration, and depositions of

similarly situated non-party fleet customer witnesses have typically been completed in anywhere

from a half hour to three hours.  Michelin can not credibly argue that it will suffer prejudice if

Mr. Solvedt is allowed to testify under the circumstances here.

The fourth factor, whether a continuance would be useful, is not an issue since there is no

question that Michelin has more than ample time to depose Mr. Solvedt, if it so chooses.

For each of the foregoing reasons, BFS respectfully requests that the Court deny

Michelin's untimely motion to exclude Mr. Solvedt's testimony from trial.

Dated: May 14, 2002                           Respectfully submitted,


                                              _Thomas P. McNulty / MMK_
                                              Terence M. Murphy
                                              Thomas P. McNulty
                                              Megyn M. Kendall
                                              JONES, DAY, REAVIS & POGUE
                                              77 West Wacker
                                              Chicago, Illinois 60601-1692
                                              Telephone:  (312) 782-3939
                                              Facsimile:  (312) 782-8585
                                              ATTORNEYS FOR THIRD-PARTY
                                              DEFENDANT BRIDGESTONE/FIRESTONE,
                                              INC.

Counsel:

Brent B. Green
Mariclare Thinnes Culver
DUNCAN, GREEN, BROWN, LANGENESS & ECKLEY
380 Capital Square
400 Locust Street
Des Moines, IA 50309-2331
Telephone: (515) 288-6440
Facsimile: (515) 288-6448

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the

above cause to each of the following attorneys of record herein at their respective addresses, via

hand delivery and facsimile, on the 14th day of May, 2002:

Andrew Goldman, Guest
The Suites of 800 Locust
800 E. Locust
Des Moines, IA  50309
Telefax No.:  (515) 244-1425

Emmet J. Bondurant, III
Ronald Coleman
Law Office
100 Court Avenue, Suite 100
Des Moines, IA  50309
Telefax No.:  (515) 282-6099

Morgan R. Hirst

# Exhibit A



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

BANDAG, INCORPORATED,
an Iowa corporation,

              Plaintiff,

·vs.

MICHELIN RETREAD
TECHNOLOGIES, INCORPORATED
a Delaware Corporation and
MICHELIN NORTH AMERICA,
INCORPORATED, a New York
Corporation, MICHELIN CORPORATION,
INC., a New York Corporation
COMPAGNIE GENERALE DES
ETABLISSEMENTS MICHELIN
a French Corporation; AND
COMPAGNIE FINANCIERE
MICHELIN, a Swiss Corporation,

              Defendants.

MICHELIN RETREAD
TECHNOLOGIES, INCORPORATED
AND MICHELIN NORTH AMERICA,
INCORPORATED,

              Counterclaimants,

vs.

BANDAG, INCORPORATED,

              Counterdefendant,

and

BRIDGESTONE/FIRESTONE, INC.

              Third Party Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action, File Number 3-99-CV-40165

**PROPOSED ORDER ON FINAL
PRETRIAL CONFERENCE**

**FILED UNDER SEAL**

RECEIVED
APR 25 2002

FILED
DAVENPORT, IOWA
02 APR 25 PM 12:
CLERK U.S. DISTRICT COUR
SOUTHERN DISTRICT OF IOW

A Final Pretrial Conference was held in the above-captioned matter pursuant to Fed. R.

Civ. P. 16 on April 26, 2002.

The following counsel, who will try the case, appeared at the conference:

1. For Bandag, Incorporated:

> Donald E. Scott, Esq.
> Bartlit Beck Herman Palenchar & Scott
> 1899 Wynkoop Street, 8th Floor
> Denver, CO  80202
>
> Andrew Goldman, Esq.
> J.B. Heaton, Esq.
> Bartlit Beck Herman Palenchar & Scott
> Courthouse Place
> 54 West Hubbard Street, Suite 300
> Chicago, IL  60610
> 312/494-4400
>
> Rachel R. Watkins Schoenig, Esq.
> Stanley, Lande & Hunter
> 301 Iowa Avenue, Suite 400
> Muscatine, IA  52761
> 563/264-5000

2. For Michelin North America, Incorporated, Michelin Retread Technologies, Incorporated, and Michelin Corporation, Inc.:

> Emmet J. Bondurant, II, Esq.
> Bondurant, Mixson & Elmore, LLP
> 3900 One Atlantic Center
> 1201 W. Peachtree Street, N.W.
> Atlanta, GA  30309
> 404/881-4126
>
> Ronald T. Coleman, Jr., Esq.
> Paul, Hastings, Janofsky & Walker LLP
> 600 Peachtree St, N.E., Suite 2400
> Atlanta, GA  30308-2222
> 404/815-2400

Thomas Gilbertsen, Esq.
Collier Shannon Scott, PLLC
Washington Harbour, Suite 400
3050 K Street, N.W.
Washington, DC  20007-5108
202/342-8400

Edward W. Remsburg
Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, PC
100 Court Avenue, Suite 600
Des Moines, IA  50309-2231
515/243-7611

3. For Compagnie Generale des Etablissements Michelin and Compagnie Financiere Michelin:

David Phillips, Esq.
Whifield & Eddy, P.L.C.
317 Sixth Avenue
Suite 1200
Des Monies, Iowa 50309-4195
515/288-6041

4. For Bridgestone/Firestone, Inc.:

Terence M. Murphy, Esq.
Jones, Day, Reavis & Pogue
2727 North Harwood Street
Dallas, TX  75201-5100
214/220-3939

Thomas P. McNulty, Esq.
Megyn M. Kendall, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker Drive
Chicago, IL  60601-1692
312/782-3939

3

Accordingly, **IT IS ORDERED**

I.    <u>**UNDISPUTED FACTS**</u>

1. Plaintiff Bandag, Incorporated ("Bandag") is a corporation organized and existing pursuant to Iowa law with its principal place of business in Iowa.

2. Defendant Michelin Retread Technologies, Inc. ("MRTT") is a corporation organized and existing pursuant to Delaware law with its principal place of business in South Carolina.

3. Defendant Michelin North America, Incorporated ("MNA") is a New York corporation with its principal place of business in South Carolina.

4. Defendant Michelin Corporation, Inc. is a New York corporation with its principal place of business in South Carolina. Defendant Compagnie Financiere Michelin ("CFM"), a Swiss company, owns a majority of the stock of Michelin Corporation. Compagnie Generale des Etablissements Michelin ("CGEM") is a French company located in Clermont-Ferrand, France that owns the majority of stock in CFM. (MNA, MRTI, Michelin Corporation, CFM and CGEM are collectively referred to as "Michelin".)

5. Third-party defendant Bridgestone/Firestone, Inc. ("Bridgestone") is an Ohio corporation with its principal place of business in Nashville, Tennessee.

Although each of the parties has separately identified what they believe are undisputed, substantive facts for purposes of summary judgment, the parties have been unable to agree that such facts are undisputed for trial.

II.     **EXHIBITS**

In accordance with the Order on Preliminary Pretrial Conference entered on April 16, 2002 ("Preliminary Pretrial Conference Order"), the parties have until April 29, 2002 to create a joint exhibit chart, which will be annexed to the Final Pretrial Order at that time.

III.    **WITNESSES**

A. & B.        The Parties' witnesses.

Bandag's, Michelin's, and Bridgestone's witness lists are attached as Exhibits A, B, and C respectively.

Although many of these witnesses will testify by deposition, the parties have not made a final decision as to which witnesses fall into that category. The parties will inform each other at least 48 hours before a particular witness is called to testify at trial whether that witness will testify live or by deposition.

C.      A party listing a witness guarantees his/her presence at trial unless the Court and opposing counsel are notified to the contrary at least seven (7) days prior to trial. All parties are free to call any witness listed by the opposing party whether they have listed them or not.

The parties will exchange lists on April 29, 2002 indicating which witnesses they "will" call live at trial (i.e., witnesses whose presence will be guaranteed at trial), and a separate list of witnesses they "may" call to testify live at trial (i.e., witnesses whose presence will not be guaranteed at trial).

D.      A witness testifying by deposition must be listed with a designation that the testimony will be by deposition.

The parties have exchanged deposition designations, and served objections and counter-

5

designations.  The parties are in the process of objecting to those counter-designations.

The parties have agreed that designated testimony may be modified prior to being played at trial but only if notice of any modifications is given no less than 72 hours before that testimony is to be played.

     E.     Each party shall give all other parties 48-hour advance notice of witnesses to be called to testify, as directed by the Preliminary Pretrial Conference Order.

## IV.    <u>FACTUAL ISSUES</u>

As set forth in the Preliminary Pretrial Conference Order, due to the extensive briefing that has occurred in this case, the parties have agreed to rely upon their respective Summary Judgment pleadings and Trial Briefs to set forth the relevant factual issues.

## V.    <u>LEGAL CONTENTIONS</u>

During the Preliminary Pretrial Conference held on April 12, 2002, the parties agreed to rely on their respective Summary Judgment pleadings and Trial Briefs to set forth the legal contentions in this case.

6

VI.   **LEGAL ISSUES**

As set forth in the Preliminary Pretrial Conference Order, due to the extensive briefing

that has occurred in this case, the parties have agreed to rely upon their respective Summary

Judgment pleadings and Trial Briefs to set forth the relevant legal issues.

Dated: April 25, 2002

David J. Meloy
Rachel R. Watkins Schoenig
Stanley, Lande & Hunter
301 Iowa Avenue, Suite 400
Muscatine, IA  52761
Telephone:  563/264-5000
Facsimile:  563/264-2672
**ATTORNEYS FOR PLAINTIFF**
**BANDAG, INCORPORATED**


**OF COUNSEL:**

Adam L. Hoeflich, Esq.
Andrew L. Goldman, Esq.
BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT
A Law Partnership & Professional Corporation
Courthouse Place
54 West Hubbard Street
Chicago, IL  60610
Telephone:    312/494-4400
Facsimile:    312/494-4440

Donald E. Scott, Esq.
BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT
1899 Wynkoop Street
8th Floor
Denver, Colorado  80202
Telephone:    303/592-3100
Facsimile:    303/592-3140

7

Melinda F. Levitt, Esq.
FOLEY & LARDNER
3000 K. Street, N.W.
Washington, D.C. 20007
Telephone:      202/672-5356
Facsimile:      202/672-5399

David B. Fein, Esq.
WIGGIN & DANA
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
Telephone:    203/363-7600
Facsimile:      203/363-7676

Edward Wood Dunham, Esq.
WIGGIN & DANA
One Century Tower
P.O. Box 1821
New Haven, CT 06508-1832
Telephone:      203/498-4400
Facsimile:      203/782-2889

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served upon counsel for all parties to the above cause at their respective addresses disclosed in the pleadings on the 25th day of April, 2002, by facsimile and overnight delivery via United Parcel Service.

Edward W. Remsburg, Esq.
Ahlers, Cooney, Dorweiler, Haynie,
Smith & Allbee, PC
100 Court Avenue, Suite 600
Des Moines, IA 50309-2231
Facsimile: 515/243-2149

Ronald T. Coleman, Jr., Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308-2222
Facsimile: 404/815-2424

Martin H. Katz, Esq.
Stephen T. Fieweger, Esq.
Katz, Huntoon & Fieweger P.C.
1705 Second Avenue
P.O. Box 3250
Rock Island, IL 61204-3250
Facsimile: 309/788-5688

David L. Phipps, Esq.
Whitfield & Eddy
317 Sixth Avenue, Suite 1200
Des Moines, Iowa 50309-4195
Facsimile: 515/246-1474

Terence M. Murphy, Esq.
Lucinda W. Andrew, Esq.
Jones, Day, Reavis & Pogue
2727 North Harwood Street
Dallas, TX 75201-1515
Facsimile: 214/969-5100

Emmet J. Bondurant, II, Esq.
Bondurant, Mixson & Elmore, LLP
1201 W. Peachtree Street
Suite 3900
Atlanta, GA 30309
Facsimile: 404/881-4111

Thomas Gilbertsen, Esq.
Michael R. Carithers, Jr., Esq.
Collier Shannon Scott, PLLC
3050 K Street, N.W., Suite 400
Washington, DC 20007-5108
Facsimile: 202/342-8451

Thomas P. McNulty, Esq.
Megyn M. Kelly, Esq.
Michael P. Manly, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, IL 60601-1692
Facsimile: 312/782-8585

James M. Brogan, Esq.
Sean Fahey, Esq.
Piper Marbury Rudnick & Wolfe LLP
3400 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2762
Facsimile: 215/656-3301

Brent B. Green
Mariclare Thinnes Culver
Duncan, Green, Brown, Langeness &
Eckley
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone: 515-288-6440
Facsimile: 515-288-6448

*Cathryn G. Lang*
Cathryn G. Lang



*EXHIBIT "A"*

## EXHIBIT A
## BANDAG'S TRIAL WITNESS LIST

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Larry Bailey | Michelin North America, Inc ("MNA")./Tire Centers, Inc. ("TCI") | TCI Location Manager, Charlotte, NC | Current | Fact |
| William Barfield | MNA | Director of Strategic and Government Sales | Current | Fact |
| James Berlin | TCI | Former Owner | Former | Fact |
| Roy Bromfield | MNA/TCI | Chief Executive Officer, Senior Leader, TCI | Current | Fact |
| Martin Carver | Bandag | President and Chief Executive Officer | Current | Fact |
| Tim Chen | Bandag | Director of Marketing | Current | Fact |
| Randy Clark | MNA | Vice President of Marketing for Michelin Americas Truck Tires | Current | Fact |
| Earl Colvard | Boulevard Tire Centers | Owner | Current | Fact |
| Thierry Coudurier | Le Manufacture Francais Pneumatiques Michelin ("LMFPM") | Member of Group Executive Council for Group Michelin | Current | Fact |
| William Drake | McGriff Tire & Oil | Vice President and General Manger | Current | Fact |
| Craig Elson | Navigant Consulting, Inc. | Senior Managing Director | Current | Expert Witness on damages |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Sam Ferrise | Bandag/Tire Distribution Systems | Chief Operating Officer and Executive Vice President of Bandag/President of Tire Distribution Systems | Former | Fact |
| Vince Fortuna | Waste Management, Inc. | Vice President of Fleet Management | Current | Fact |
| Michael Hamisher | Mileage Masters | Owner | Current | Fact |
| Roger Handren | MNA | Manager of Government Account, former Director of Retread Sales Development | Current | Fact |
| James Hay | MNA/MRTI | Director of Retreading for Michelin North America, President of Michelin Retreading Technologies | Current | Fact |
| Warren Heidbreder | Bandag | Chief Financial Officer and Corporate Secretary | Current | Fact |
| Pamela Jamarik | MNA/MRTI | Director of Franchise Compliance for MRT | Current | Fact |
| Edward Kushell | Franchise Consulting Group | President | Current | Expert witness on franchising |

2

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---------|-------------|-------|--------------------------|----------------------|
| Neil Loughran | Bandag | Director of Sales for Western Division | Current | Fact |
| Issac Luna | Ryder Systems, Inc. | President | Current | Fact |
| Larry Malone | Consolidated Freightways, Inc. | Manager of Tire Purchasing and Equipment Administration | Current | Fact |
| Joseph Malpede | MNA/TCI | Strategic Account Liaison for TCI, formerly Director of Sales for the Central Zone for MNA | Current | Fact |
| Phillip Manzo | Bauer Built (formerly with MNA) | Vice President for Commercial Marketing | Current | Fact |
| Steven Maxson | Averitt Express, Inc. | Vice President of Preventative Maintenance | Current | Fact |
| Florent Menegaux | MNA | Vice President of Sales for Michelin North America Truck Tires | Current | Fact |
| John Meyers | WingFoot Commercial | Chairman and Chief Executive Officer | Current | Fact |
| Frank Nelson | Bandag | Field Engineering and Research and Development Team | Former | Fact |
| Theodore Powell | MNA | Channel Manager and Development Support | Current | Fact |

3

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Thomas Praktish | MNA | Plans and Results Manager for Truck Tires | Current | Fact |
| John Rice | MNA | Executive Vice President; Chief Operating Officer Michelin Americas Truck Tires | Current | Fact |
| Michael Sandman | Fuld & Co. | Senior Vice President | Current | Fact |
| Ronald Seiler | Bandag | Vice President of Applied Research and Development | Current | Fact |
| Andrew Sisler | Bandag | Vice President of North American Franchise Sales and Support | Current | Fact |
| Joel Smyers | Bandag | Director of Sales for the Central Division | Current | Fact |
| John Snider | Snider Tires, Inc. | President and Chief Executive Officer | Current | Fact |
| John Solow | University of Iowa | Associate Professor of Economics | Current | Expert witness Economist |
| James Stankiewicz | Valley Tire, Inc. | President | Current | Fact |
| David Stringer | MNA/TCI (formerly owner of Stringer Tire) | Consultant | Current | Fact |
| Robert Sumerel | Bob Sumerel Tire Co. | Owner | Current | Fact |
| David White | White Tire, Inc. | Owner | Former | Fact |



*EXHIBIT "B"*

**EXHIBIT B**
**MICHELIN'S TRIAL WITNESS LIST**

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Singh Ahluwalia | Bridgestone/Firestone, Inc. | Vice-President of Truck Tire Sales | Current | Fact |
| Ray Angrilla | Bridgestone/Firestone, Inc. | District Manager | Current | Fact |
| Norm Ball | MRTI | Director of Sales and Marketing | Current | Fact |
| William Barfield | MNA | Director of Strategic and Government Sales | Current | Fact |
| Jerry Bauer | Bauer Built/formerly MNA | President | Current | Fact |
| Duane Bergey | Bergey Tire | President | Current | Fact |
| James Berlin | TCI | Owner of TCI | Former | Fact |
| Peter Bogatinoff | Bridgestone/Firestone, Inc./ Off the Road Tire Company | General Manager, Retread Operations | Current | Fact |
| David Bowen | Jack's Tire & Oil | President Jack's Tire & Oil | Current | Fact |
| Armand Boyes | Goodyear. | General Manager Next-Tread | Current | Fact |
| Richard Brahler | Brahler's Truckers Supply | President | Current | Fact |
| Tom Brennan | MNA | Director of Sales for the Southeastern United States for Michelin Tire Corporation | Current | Fact |
| Roy Bromfield | MNA/TCI | Senior Leader of Tire Centers LLC/Chief Executive Officer | Current | Fact |

1

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Nan Bulger | Fuld & Company | Director of Manufacturing Consulting Practice | Current | Fact |
| Art Campagnoni | Bridgestone/Firestone, Inc. | Regional General Manager | Current | Fact |
| Raymond Carr | Ray Carr Tires, Inc. | President and Sole Stockholder | Current | Fact |
| Martin Carver | Bandag | President and Chief Executive Officer | Current | Fact |
| John Carver | Bandag | Eastern Iowa Tires, Inc. | Former | Fact |
| Roy James Carver, Jr. | Bandag | Member of the Bandag Board of Directors | Current | Fact |
| Dennis Case | Bandag | Director of Sales for the Eastern Division | Current | Fact |
| Tim Chen | Bandag | Director of Marketing | Current | Fact |
| Randall Clark | MNA | Vice-President of Marketing for Michelin Americas Truck Tires | Current | Fact |
| Earl Colvard | Boulevard Tire | President | Current | Fact |
| Jeffrey Corum | William Blair & Co. | Merger's and Acquisitions Associate | Current | Fact |
| Thierry Coudurier | Le Manufacture Francais Pneumatiques Michelin "LMFPM" | Member of Group Executive Council for Group Michelin | Current | Fact |
| Johnny Dennis | Consolidated Tire | President | Current | Fact |
| Thomas Dupont | D2 Research | President | Current | Expert |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| David Eaton | Bandag | Vice-President Legal and Risk Management Services | Current | Fact |
| Sam Ferrise | Bandag | Chief Operating Officer and Executive Vice President of Bandag/President of Tire Distributions Systems | Former | Fact |
| Dennis Flynn | Purcell Tires | Executive Vice President | Current | Fact |
| Richard Fowler | Market Focus, Inc. | President | Current | Fact |
| Minekazu Fujimura | Bridgestone/Firestone, Inc. | Director of Product Planning and Development Division/Member of the Corporate Board of Directors of Bridgestone Corp. | Current | Fact |
| Max Fuller | USXpress Enterprises | Co-Chairman | Current | Fact |
| Steve Graham | Schneider National, Inc. | Manager Tire and Fuel Systems | Current | Fact |
| Roger Handren | MNA | Manager of Government Account, former Director of Retread Sales Development | Current | Fact |
| Twyla Hartman | Bandag | Franchise Supervisor | Current | Fact |
| Robert Hawk | Bandag | Comptroller, Bandag North America | Current | Fact |

3

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| James Hay | MRTI | Director of Retreading for Michelin North America, President of Michelin | Current | Fact |
| Warren Heidbreder | Bandag | Chief Financial Officer and Corporate Secretary | Current | Fact |
| Masahiro Higashi | Bridgestone/Fire stone, Inc. | Business Director at Bridgestone/Fireston e Hedquarters | Current | Fact |
| Sharon Helland | Shinshu Services | Translator | Current | Fact |
| Harrell Honeycutt | Bandag | Marketing Manager for Market Research, Information, and Planning | Current | Fact |
| Pamela Jamarik | MRTI | Director of Franchise Compliance for MRT | Current | Fact |
| Dennis Jones | Bridgestone/Fire stone, Inc. | E-Business Marketing Manager | Current | Fact |
| Rickey Jones | Bandag | Director of Fleet Sales | Current | Fact |
| John Lampe | Bridgestone/Fire stone, Inc. | President, Chairman, and CEO Bridgestone/Fireston e America's Holding Inc. | Current | Fact |
| Neil Loughran | Bandag | Director of Sales for Western Division | Current | Fact |
| Larry Malone | Consolidated Freightways | Manager of Tire Purchasing and Equipment Administration | Current | Fact |
| Phil Manzo | Bauer Built/formerly MNA | Vice President in Charge of Commercial Marketing | Current | Fact |

4

| Witness | Affiliation | Title | Current/Former Employee | Fact/Expert Witness |
|---|---|---|---|---|
| Steve Maxson | Averitt Express, Inc. | Vice President of Preventive Maintenance | Current | Fact |
| James McClave | Info Tech | President | Current | Expert/Fact Damages |
| John McErlane | Bandag | Vice President Marketing and Sales | Current | Fact |
| Gary McGinnis | Ozarko TCI | President | Current | Fact |
| Don Mead | Bandag | Vice President of Marketing | Former | Fact |
| Florent Menegaux | MNA | Vice President of Sales for Michelin North America Truck Tires | Current | Fact |
| James Micali | MNA | Chairman and President of Michelin North America | Current | Fact |
| Robert Myers | Treadco/WingFoot Commercial | Chairman and Chief Executive Officer | Current | Fact |
| Almarin Phillips | Almarin Phillips, Inc. | President | Current | Expert Economist |
| Theodore Powell | MNA | Channel Manager and Development Support | Current | Fact |
| Tom Praktish | MNA | Plans and Results Manager for Truck Tires | Current | Fact |
| Charles Raben | Raben Tire Company, Inc. | Treasurer | Current | Fact |
| Philip Reitz | William Blair & Co. | Principal in the Corporate Finance Department | Current | Fact |
| Ray Render | Bridgestone/Firestone, Inc. | Territory Manager of Sales Division | Current | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---------|-------------|-------|--------------------------|----------------------|
| John Rice | MNA | Executive Vice President; Chief Operating Officer Michelin Americas Truck Tires | Current | Fact |
| Paul Roots | Bandag | Manager of Special Projects | Current | Fact |
| Michael Sandman | Fuld & Co. | Senior Vice President | Current | Fact |
| Henry Schmitt | MRTI | Director Franchise Operations | Current | Fact |
| David Schoettler | Schoettler Tire | President | Current | Fact |
| Brenda Seat | Shinshu Services | Translator | Current | Fact |
| Kenji Shibata | Bridgestone/Fire stone, Inc. | Advisor to the Overseas Business Division Former | Current | Fact |
| Andrew Sisler | Bandag | Vice President of North America Franchise Sales and Support | Current | Fact |
| Richard Skinner | Bridgestone/Fire stone, Inc. | Executive Director of Commercial Tire Marketing | Current | Fact |
| Joel Smyers | Bandag | Director of Sales for the Central Division | Current | Fact |
| John Snider | Snider Tire, Inc. | President and Chief Executive Officer | Current | Fact |
| James F. Stankiewicz | Valley Tire | President | Current | Fact |
| Bruce Stockton | Contract Freighters, Inc. | Vice President of Maintenance | Current | Fact |
| Roy Stogner | Bridgestone/Fire stone, Inc. | Director of Commercial Corporate Accounts | Current | Fact |
| David Stringer | Formerly Stringer Tire | Consultant | Current | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| J. Gary Suding | Bandag | Director of Sales for Bandag's Canadian Division | Current | Fact |
| Robert B. Sumerel | Bob Sumerel Tire Co. | Owner | Current | Fact |
| Todd Sumerel | Bob Sumerel Tire Co. | Director of Commercial Operations | Current | Fact |
| Michael Tirona | Bandag | Vice President and General Manager for Bandag of Europe | Current | Fact |
| Richard Tolotti | Jack's Tire & Oil | Vice President | Current | Fact |
| Kathy Vanderford | MNA | Quality Assurance Manager | Current | Fact |
| Bernard Vasdeboncoeur | Le Manufacture Francais Pneumatiques Michelin "LMFPM" | President of Michelin's Worldwide Truck Tire Business Unit | Current | Fact |
| Richard Volk | The Oliver Group | Vice President North American Sales | Current | Fact |
| David White | White Tire, Inc. | Owner | Former | Fact |
| Mark Winkler | Bandag | Fleet Marketing Manager | Current | Fact |
| Bill Ziegler | Ziegler Tire | President | Current | Fact |
| | | | | |

7



*EXHIBIT "C"*

## EXHIBIT C
## BRIDGESTONE/FIRESTONE'S TRIAL WITNESS LIST

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Singh Ahluwalia | BFS | Vice President Truck Tire Sales | Current | Fact |
| Glenn Atkinson | BFS | CFO | Current | Fact |
| Larry Bailey | Michelin North America, Inc. | TCI Location Manager, Charlotte, NC | Current | Fact |
| William Barfield | Michelin North America, Inc. | Director of Strategic and Government Sales | Current | Fact |
| Ralph Beaujard | LMFPM | Director of Replacement Market for Trucks | Current | Fact |
| James Berlin | Tire Centers, Inc. | Owner | Former | Fact |
| Peter Bogatinoff | BFS | Consultant | Current | Fact |
| David Bowen | Jack's Tire & Oil | Owner | Current | Fact |
| Thomas Brennan | Michelin North America, Inc. | Director of Sales, Southeastern U.S. | Current | Fact |
| Roy Bromfield | Tire Centers, Inc. | Chief Executive Officer, Senior Leader, Tire Centers LLC. | Current | Fact |
| Art Campagnoni | BFS | Regional Sales Mgr. | Current | Fact |
| Martin Carver | Bandag, Inc. | President and Chief Executive Officer | Current | Fact |
| Tim Chen | Bandag, Inc. | Director of Marketing | Current | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Randy Clark | Michelin North America, Inc. | Vice President of Marketing for Michelin Americas Truck Tires | Current | Fact |
| Earl Colvard | Boulevard Tire | Owner | Current | Fact |
| Thierry Coudurier | LMFPM | Member of Group Executive Council for Group Michelin | Current | Fact |
| Robert Davidson | Michelin North America, Inc. | National Dealer Sales Director | Former | Fact |
| William Drake | McGriff Tire | Vice President and Manager | Current | Fact |
| Dr. Thomas DuPont | D² Research | | Current | Expert/ Survey |
| Sam Ferrise | Bandag, Inc. | Chief Operating Officer and Executive Vice President of Bandag/President of Tire Distribution Systems | Former | Fact |
| Minekazu Fujimura | Bridgestone Corporation (formerly BFS) | Chief Admin. Officer | Former | Fact |
| Bernard Gerardin | MFPM | Director-Planning and Results - Truck Product Line | Current | Fact |
| Roger Handren | Michelin North America, Inc. | Manager of Government Account, former Director of Retread Sales Development | Current | Fact |

2

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| James Hay | Michelin Retread Technologies, Inc. | Director of Retreading for Michelin North America, President of Michelin Retreading Technologies | Current | Fact |
| Pam Jamarik | Michelin North America, Inc. | Director of Franchise Compliance for MRT | Current | Fact |
| John Lampe | BFS | CEO | Current | Fact |
| Dr. James Langenfeld | LECG, Inc. | Director | Current | Expert/ Economist & Damages |
| Neil Loughran | Bandag, Inc. | Director of Sales for Western Division | Current | Fact |
| Isaac Luna | Ryder Systems, Inc. | Vice President | Former | Fact |
| Larry Malone | Consolidated Freightways, Inc. | Manager of Tire Purchasing and Equipment Administration | Current | Fact |
| Joseph Malpede | Michelin North America, Inc. | Strategic Account Liaison for TCI, formerly Director of Sales for the Central Zone for MNA | Current | Fact |
| Phillip Manzo | Bauer Built (formerly with Michelin North America, Inc.) | Vice President for Commercial Marketing | Current | Fact |
| Steve Maxson | Averitt Express, Inc. | Vice President/ Preventive Maintenance | Current | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| John McErlane | Bandag, Inc. | Vice-President, Marketing and Sales | Current | Fact |
| Dr. James T. McClave | InfoTech, Inc. | Director | Current | Expert/ Damages |
| Florent Menegaux | Michelin North America, Inc. | Vice President of Sales for Michelin North America Truck Tires | Current | Fact |
| John Meyers | WingFoot | Chairman and Chief Executive Officer | Current | Fact |
| James Micali | Michelin North America, Inc. | CEO | Current | Fact |
| Dr. Almarin Phillips | | Owner | Current | Expert/ Economist |
| Ted Powell | Michelin North America, Inc. | Channel Manager and Development Support | Current | Fact |
| John Rice | Michelin North America, Inc. | Executive Vice President; Chief Operating Officer Michelin Americas Truck Tires | Current | Fact |
| Andrew Sisler | Bandag, Inc. | Vice President of North American Franchise Sales and Support | Current | Fact |
| Richard Skinner | BFS | Director of Marketing | Current | Fact |
| John Snider | Snider Tire | President and Chief Executive Officer | Current | Fact |
| Terry Solvedt | Ruan Transportation Management Systems | Senior Vice President Operations | Current | Fact |

4

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| James Stankiewicz | Valley Tire, Inc. | President | Current | Fact |
| Roy Stogner | BFS | National Fleet Mgr. | Current | Fact |
| Dave Stringer | MNA (formerly with Stringer Tire, Inc. and Tire Centers, Inc.) | Consultant | Current | Fact |
| Bob Sumerel | Bob Sumerel Tire Company | Owner | Current | Fact |
| Carl Tapp | P.A.M. Transport | Director/Operations | Current | Fact |
| Richard Tolotti | Jack's Tire & Oil | Owner | Current | Fact |
| Bernard Vasdeboncoeur | CEG | Member Executive Council, President Worldwide Truck Tires | Current | Fact |
| David White | White Tire, Inc. | Owner | Former | Fact |
| Mark Winkler | Bandag, Inc. | Fleet Marketing Manager | Current | Fact |
| Bill Ziegler | Ziegler Tire, Inc | Owner | Current | Fact |
| Wendy Peel or other witnesses from TransPerfect Translations, Inc., Chicago, Illinois | | Certified Translator | Current | Fact |

# Exhibit B

APR-28-2002 MON 05:02 PM                                FAX NO.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION



|                                                    |   |                                              |
| -------------------------------------------------- | - | -------------------------------------------- |
| BANDAG, INC.                                       | ) |                                              |
|                                                    | ) |                                              |
|     Plaintiff,                 | ) |                                              |
|                                                    | ) |                                              |
| v.                                                 | ) | Civil Action No. 3-99-CV-80165               |
|                                                    | ) |                                              |
| MICHELIN RETREAD                                   | ) |                                              |
| TECHNOLOGIES, INCORPORATED,                        | ) | THIRD PARTY DEFENDANT                        |
| AND MICHELIN NORTH AMERICA,                        | ) | BRIDGESTONE/FIRESTONE,                       |
| INCORPORATED                                       | ) | INC.'S NOTICE REGARDING                      |
|                                                    | ) | TRIAL WITNESS LIST                           |
|     Defendants.                | ) | PURSUANT TO SECTION III.C.                   |
|                                                    | ) | OF FINAL PRETRIAL ORDER                      |
| MICHELIN RETREAD                                    | ) |                                              |
| TECHNOLOGIES, INCORPORATED,                        | ) |                                              |
| AND MICHELIN NORTH AMERICA,                        | ) |                                              |
| INCORPORATED                                       | ) |                                              |
|                                                    | ) |                                              |
|     Counterclaimants,          | ) |                                              |
|                                                    | ) |                                              |
| v.                                                 | ) |                                              |
|                                                    | ) |                                              |
| BANDAG, INC.                                       | ) |                                              |
|                                                    | ) |                                              |
|     Counterdefendant,          | ) |                                              |
|                                                    | ) |                                              |
| and                                                | ) |                                              |
|                                                    | ) |                                              |
| BRIDGESTONE/FIRESTONE, INC.                        | ) |                                              |
|                                                    | ) |                                              |
|     Third-Party Defendant.     | ) |                                              |

THIRD PARTY DEFENDANT BRIDGESTONE/FIRESTONE INC.'S
NOTICE REGARDING TRIAL WITNESS LIST
PURSUANT TO SECTION III.C. OF FINAL PRETRIAL ORDER

Pursuant to the Court's scheduling orders and Section III.C. of the Order on Final Pretrial

Conference, third-party defendant Bridgestone/ Firestone Inc. ("BFS") identifies the following

CH-1211400v1

persons as witnesses at trial in its case-in-chief, either in person or by deposition. Witnesses whose name is identified in bold print are witnesses whom BFS "will" call live at trial (*i.e.*, witnesses whose presence will be guaranteed at trial), and the remaining witnesses are among those whom BFS "may" call live at trial (*i.e.*, witnesses whose presence will not be guaranteed at trial.)

## BFS' TRIAL WITNESS LIST

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| Singh Ahluwalia | BFS | Vice President Truck Tire Sales | Current | Fact |
| Glenn Atkinson | BFS | CFO | Current | Fact |
| Larry Bailey | Michelin North America, Inc. | TCI Location Manager, Charlotte, NC | Current | Fact |
| William Barfield | Michelin North America, Inc. | Director of Strategic and Government Sales | Current | Fact |
| Ralph Beaujard | LMFPM | Director of Replacement Market for Trucks | Current | Fact |
| James Berlin | Tire Centers, Inc. | Owner | Former | Fact |
| Peter Bogatinoff | BFS | Consultant | Current | Fact |
| David Bowen | Jack's Tire & Oil | Owner | Current | Fact |
| Thomas Brennan | Michelin North America, Inc. | Director of Sales, Southeastern U.S. | Current | Fact |
| Roy Bromfield | Tire Centers, Inc. | Chief Executive Officer, Senior Leader, Tire Centers LLC. | Current | Fact |
| Art Campagnoni | BFS | Regional Sales Mgr. | Current | Fact |
| Martin Carver | Bandag, Inc. | President and Chief Executive Officer | Current | Fact |
| Tim Chen | Bandag, Inc. | Director of Marketing | Current | Fact |
| Randy Clark | Michelin North America, Inc. | Vice President of Marketing for Michelin Americas Truck Tires | Current | Fact |
| Earl Colvard | Boulevard Tire | Owner | Current | Fact |
| Thierry Coudurier | LMFPM | Member of Group Executive Council for Group Michelin | Current | Fact |
| Robert Davidson | Michelin North America, Inc. | National Dealer Sales Director | Former | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---|---|---|---|---|
| William Drake | McGriff Tire | Vice President and Manager | Current | Fact |
| Dr. Thomas DuPont | D² Research | | Current | Expert/ Survey |
| Sam Ferrise | Bandag, Inc. | Chief Operating Officer and Executive Vice President of Bandag/President of Tire Distribution Systems | Former | Fact |
| Minekazu Fujimura | Bridgestone Corporation (formerly BFS) | Chief Admin. Officer | Former | Fact |
| Bernard Gerardin | MFPM | Director-Planning and Results – Truck Product Line | Current | Fact |
| Roger Handren | Michelin North America, Inc. | Manager of Government Account, former Director of Retread Sales Development | Current | Fact |
| James Hay | Michelin Retread Technologies, Inc. | Director of Retreading for Michelin North America, President of Michelin Retreading Technologies | Current | Fact |
| Pam Jamarik | Michelin North America, Inc. | Director of Franchise Compliance for MRT | Current | Fact |
| John Lampe | BFS | CEO | Current | Fact |
| Dr. James Langenfeld | LECG, Inc. | Director | Current | Expert/ Economist & Damages |
| Neil Loughran | Bandag, Inc. | Director of Sales for Western Division | Current | Fact |
| Isaac Luna | Ryder Systems, Inc. | Vice President | Former | Fact |
| Larry Malone | Consolidated Freightways, Inc. | Manager of Tire Purchasing and Equipment Administration | Current | Fact |
| Joseph Malpede | Michelin North America, Inc. | Strategic Account Liaison for TCI, formerly Director of Sales for the Central Zone for MNA | Current | Fact |
| Phillip Manzo | Bauer Built (formerly with Michelin North America, Inc.) | Vice President for Commercial Marketing | Current | Fact |

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---------|-------------|-------|--------------------------|----------------------|
| Steve Maxson | Averitt Express, Inc. | Vice President/ Preventive Maintenance | Current | Fact |
| John McErlane | Bandag, Inc. | Vice-President, Marketing and Sales | Current | Fact |
| Dr. James T. McClave | InfoTech, Inc. | Director | Current | Expert/ Damages |
| Florent Menegaux | Michelin North America, Inc. | Vice President of Sales for Michelin North America Truck Tires | Current | Fact |
| John Meyers | WingFoot | Chairman and Chief Executive Officer | Current | Fact |
| James Micali | Michelin North America, Inc. | CEO | Current | Fact |
| Dr. Almarin Phillips | | Owner | Current | Expert/ Economist |
| Ted Powell | Michelin North America, Inc. | Channel Manager and Development Support | Current | Fact |
| John Rice | Michelin North America, Inc. | Executive Vice President; Chief Operating Officer Michelin Americas Truck Tires | Current | Fact |
| Andrew Sisler | Bandag, Inc. | Vice President of North American Franchise Sales and Support | Current | Fact |
| Richard Skinner | BFS | Director of Marketing | Current | Fact |
| John Snider | Snider Tire | President and Chief Executive Officer | Current | Fact |
| Terry Solvedt | Ruan Transportation Management Systems | Senior Vice President Operations | Current | Fact |
| James Stankiewicz | Valley Tire, Inc. | President | Current | Fact |
| Roy Stogner | BFS | National Fleet Mgr. | Current | Fact |
| Dave Stringer | MNA (formerly with Stringer Tire, Inc. and Tire Centers, Inc.) | Consultant | Current | Fact |
| Bob Sumerel | Bob Sumerel Tire Company | Owner | Current | Fact |
| Carl Tapp | P.A.M. Transport | Director/Operations | Current | Fact |
| Richard Tolotti | Jack's Tire & Oil | Owner | Current | Fact |
| Bernard Vasdeboncoeur | CEG | Member Executive Council, President Worldwide Truck Tires | Current | Fact |
| David White | White Tire, Inc. | Owner | Former | Fact |

CN-1211400v1

4

APR-29-2002 MON 05:03 PM

| Witness | Affiliation | Title | Current/ Former Employee | Fact/ Expert Witness |
|---------|-------------|-------|--------------------------|----------------------|
| Mark Winkler | Bandag, Inc. | Fleet Marketing Manager | Current | Fact |
| Bill Ziegler | Ziegler Tire, Inc | Owner | Current | Fact |
| Wendy Peel or other witnesses | from TransPerfect Translations, Inc., Chicago, Illinois | Certified Translator | Current | Fact |

BFS reserves the right to call material witnesses who are identified through exhibits or documents produced on an untimely basis by Michelin, witnesses identified on any other party's Witness List, and rebuttal witnesses, depending upon the evidence presented during either Bandag's or Michelin's cases.

BFS may call as trial witnesses, either in person or by previous testimony, any witness whose deposition has not yet been completed but will be completed prior to and during trial.

BFS reserves the right to supplement this witness list prior to trial.

Dated: April 26, 2002

Respectfully submitted,

*Brent B. Green* /SKE

Brent B. Green
Mariclare Thinnes Culver
Duncan, Green, Brown, Langeness & Eckley
380 Capital Square
400 Locust Street
Des Moines, Iowa  50309-2331
Telephone:  (515) 288-6440
Facsimile:  (515) 288-6448

Counsel:

Terrence M. Murphy
Thomas P. McNulty
Megyn M. Kendall
JONES, DAY, REAVIS & POGUE
77 West Wacker
Chicago, Illinois 60601-1692

CH-121 1400v1

5

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the following attorneys of record herein at their respective addresses disclosed on the pleadings on the 29th day of April, 2002, by:

| | |
|---|---|
| Adam L. Hoeflich<br>Andrew Goldman<br>BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT<br>Courthouse Place<br>54 West Hubbard Street, Suite 300<br>Chicago, IL 60610<br>Fax: 312-494-4440 | Ronald T. Coleman, Jr.<br>PAUL, HASTINGS, JANOFSKY & WALKER LLP<br>600 Peachtree Street, Suite 2400<br>Atlanta, GA 30308<br>Fax: 404-815-2424 |
| Melinda F. Levitt<br>FOLEY & LARDNER<br>3000 K Street, NW<br>Washington, DC 20007<br>Fax: 202-672-5399 | David B. Fein<br>WIGGIN & DANA<br>400 Atlantic Street<br>P.O. Box 110325<br>Stamford, CT 06911-0325<br>Fax: 203-363-7676 |
| Edward W. Remsburg<br>AHLERS, CONNEY, DORWEILER, HAYNIE, SMITH & ALLBEE, P.C.<br>100 Court Avenue, Suite 600<br>Des Moines, IA 50309-2231<br>Fax: 515-243-2149 | David J. Meloy<br>STANLEY, LANDE & HUNTER<br>900 Firstar Center<br>201 West Second Street<br>Davenport, IA 52801<br>Fax: 319-263-8775 |
| Emmet J. Bondurant<br>BONDURANT, MIXSON & ELMORE, LLP<br>1201 W. Peachtree Street, NW<br>Suite 3900<br>Atlanta, GA 30309<br>Fax: 404-881-4111 | Thomas E. Gilbertsen<br>COLLIER SHANNON SCOTT, PLLC<br>3050 K Street, NW,<br>Suite 400<br>Washington, DC 20007<br>Fax: 202-342-8451 |
| James M. Brogan<br>Sean Fahey<br>PIPER MARBURY RUDNICK & WOLFE LLP<br>3400 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA 19103-2762<br>Fax: 215-656-3301 | |
| [ ]   U.S. Mail<br>[X]   Federal Express | [X]   Fax<br>[ ]   UPS Next Day<br>[ ]   Other |

Gregory S. Otsuka

CH-1199876v13

# Exhibit C

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| BANDAG, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELIN RETREAD | ) | |
| TECHNOLOGIES, INCORPORATED, | ) | |
| and | ) | |
| MICHELIN NORTH AMERICA, | ) | Civil Action No. 3-99-CV-80165 |
| INCORPORATED, | ) | |
| | ) | THIRD-PARTY DEFENDANT |
| Defendants. | ) | BRIDGESTONE/FIRESTONE, |
| | ) | INC.'S ANSWERS TO MICHELIN'S |
| | ) | FIRST SET OF |
| | ) | INTERROGATORIES |
| MICHELIN RETREAD | ) | |
| TECHNOLOGIES, INCORPORATED, | ) | |
| and | ) | |
| MICHELIN NORTH AMERICA, INC., | ) | |
| | ) | |
| Counterclaimants, | ) | CONFIDENTIAL PURSUANT TO |
| | ) | PROTECTIVE ORDER |
| v. | ) | |
| | ) | ATTORNEYS' EYES ONLY |
| BANDAG, INCORPORATED, | ) | |
| | ) | |
| Counterdefendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIDGESTONE/FIRESTONE, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, third-party defendant

Bridgestone/Firestone, Inc. ("Bridgestone"), through its attorneys, for its answers to Michelin

Defendants' First Set of Interrogatories to Counterclaim [sic] Defendant Bridgestone/Firestone,
Inc. ("Michelin's Interrogatories"), states as follows:

## GENERAL OBJECTIONS

1.      Bridgestone's specific objections to each interrogatory are in addition to the
General Objections set forth in this section. These General Objections form a part of the
response to each and every interrogatory and are set forth here to avoid the duplication and
repetition of restating them for each response. The absence of a reference to a General Objection
in each response to a particular interrogatory does not constitute a waiver of any General
Objection with respect to that interrogatory. All responses are made subject to and without
waiver of Bridgestone's general and specific objections.

2.      Bridgestone objects to Michelin's Interrogatories to the extent that they call for
information that is protected from disclosure by the attorney-client privilege, the work-product
doctrine, or any other applicable law, rule, or privilege, in that such material is not properly
discoverable.

3.      Bridgestone objects to Michelin's Interrogatories to the extent that they seek to
obtain information not within the possession, custody or control of Bridgestone. As such, they
exceed the scope of allowable discovery.

4.      Bridgestone objects to each of Michelin's Definitions and Instructions and to each
and every interrogatory to the extent that they are inconsistent with or seek to impose obligations
upon Bridgestone beyond the obligations and requirements imposed by the Federal Rules of
Civil Procedure and the Local Rules of the Southern District of Iowa.

5.      Bridgestone objects to each and every interrogatory to the extent that it is overly
broad, unduly burdensome, oppressive and harassing, or is vague and ambiguous. Bridgestone

further object to interrogatories that are overly broad and unduly burdensome because they fail to reasonably limit the requests to a relevant period of time.

6.     Bridgestone objects to each and every interrogatory to the extent that it is unreasonably cumulative or duplicative, or seeks information obtainable from some other source that is more convenient, less burdensome, or less expensive.

7.     Bridgestone objects to each and every interrogatory to the extent that it is premature in that it seeks information concerning matters as to which discovery is ongoing and/or seeks information to be provided by expert witnesses.

8.     Bridgestone's responses are made without in any way waiving:  (a) the right to object, on the grounds of competency, relevancy, materiality, privilege, or admissibility as evidence for any purpose in any subsequent proceeding in this action or any other action; and (b) the right to object on any ground to other discovery requests involving or relating to the subject matter of these requests.

9.     The following responses to Michelin's interrogatories contain all the information available to Bridgestone at this time.  Discovery in this matter is ongoing.  Bridgestone hereby reserves its right to amend and supplement its responses if additional information is discovered or in case of inadvertent error or omission.

## INTERROGATORIES

1.     If your response to any one of Michelin's Requests for Admission in either Michelin's First Set or Second Set of Requests for Admissions served upon you herewith was anything other than an unqualified admission, then separately for each such response explain in detail the basis for your denial or qualification, and identify all persons who could testify under oath as to the facts supporting your denial or qualification. For any Request for Admission in Michelin's Second Set of Requests for Admission served herewith where you refused to admit the authenticity of a translation, provide what you believe to be a true and accurate translation.

**ANSWER:**     In addition to its General Objections, Bridgestone objects to this interrogatory because it is overly broad and unduly burdensome. Subject to its objections, Bridgestone states that any explanations for its denial or qualification of Michelins' First Set or Second Set of Requests for Admission are contained in Bridgestone's responses to those Requests. Additionally, Bridgestone is under no obligation to prepare a true and accurate English translation of its Japanese documents, and, thus, Bridgestone will not produce a complete translation of every document named in Michelin's Second Set of Requests for Admission. For those Japanese documents named in Michelin's Second Set of Requests for Admission for which Bridgestone did not admit the authenticity of translation and for which Bridgestone does have a complete English translation, Bridgestone will produce a copy of its translation at a mutually agreeable time and place for Michelin's inspection.

2.     Identify the individuals who are referenced in the BFS documents produced to Michelin by Bridgestone in response to the third party subpoena in this action, who are identified in those documents only by the following internal Bridgestone code numbers: 2, 3, 7, 8, 9, 20, 30, 70, 80, 90, 120, 1610, 7010, 7130, 7131, A3, F6, F7, F8, K90, M13, S90.

**ANSWER:**     Bridgestone states that the code numbers listed refer to Bridgestone positions, not to individuals. Thus, when a Bridgestone employee changes positions, his or her number also changes. Since a given code can refer to more than one person depending on who holds a particular position at a specific point in time, Bridgestone cannot identify the person who is

referenced by a certain code number unless Bridgestone knows when the code number was used in a document.

    3.    Identify the person or persons who authored or otherwise prepared the following documents:  BFS 006476; BFS 003884-88; BFS 006203; BFS 006508-09, BFS 000759-88; BFS 006327; BFS 00804-12; BFS 00815-19; BFS 006772-73; BFS006766; BFS 006205; BFS 006189; BFS 000795-97; BFS 006745-46; BFS 006741-44; BFS 006739; BFS 006648-50; BFS 006469-71; BFS 001791-1861; BFS 003984-86; BFS 003978-82.

**ANSWER:**    Bridgestone states that to the best of its knowledge, the following documents were authored by the following people:

| | |
|---|---|
| BFS 006476 | Minekezu ("Mike") Fujimura |
| BFS 003884-88 | Unknown |
| BFS 006203 | Masatoshi Ono |
| BFS 006508-09 | Unknown |
| BFS 000759-88 | Pete Bogatinoff |
| BFS 006327 | Akira Tamura |
| BFS 00804-12 | Singh Ahluwalia authored portions of this document.  The author of the remaining portions is unknown. |
| BFS 00815-19 | Singh Ahluwalia |
| BFS 006772-73 | Mike Fujimura |
| BFS 006766 | Mike Fujimura |
| BFS 006205 | Masatoshi Ono |
| BFS 006189 | M. Takenaka |
| | Handwritten portion by Mike Fujimura |
| BFS 000795-96 | Singh Ahluwalia |
| BFS 006745-46 | Masaki Tsuya |

| | |
|---|---|
| BFS 006741-44 | Masaki Tsuya |
| BFS 006739 | Masaki Tsuya |
| BFS 006648 | Masaki Tsuya |
| BFS 006649-50 | Akira Tamura |
| BFS 006469-71 | Akira Tamura |
| BFS 001791-001861 | Spencer Martin |
| BFS 003984-86 | Rick Skinner |
| | Handwritten notes on BFS 003984 by John Lampe |
| BFS 003978-81 | John Lampe |
| BFS 003982 | Singh Ahluwalia |

4.     Describe in detail any formal or informal agreements, arrangements, joint ventures, joint marketing or distribution programs, or any other forms of collaboration, cooperation, or business relationship of any kind with Bandag (excluding any business relationships as to TDS, TMS, or GCR), including without limitation the nature and substance of each such business relationship and the persons most knowledgeable about each such business relationship.

**ANSWER:**     In addition to its General Objections, Bridgestone objects to this interrogatory

because it contains no time period restriction, is vague, is overly broad, and is unduly

burdensome.  Subject to its objections, Bridgestone states that there are presently no formal or

informal agreements, arrangements, joint ventures, joint marketing or distribution programs

between Bridgestone and Bandag, although the two companies are presently involved in

negotiations to, among other things, enter a joint venture to provide joint billing to their mutual

customers.  Moreover, excluding any business relationships as to TDS, TMS, or GCR, the two

companies have interacted in the following ways:

(a)     Bridgestone and Bandag executives occasionally have exchanged information relating to threats to their mutual dealer network or to fleets.

(b)     At the request of Ryder Systems, Inc. ("Ryder"), Ruan, and other fleets, Bridgestone and Bandag have worked together to provide integrated tire management services to those fleets.  Bridgestone and Bandag from time to time have made joint sales calls to fleets, often at the fleets' request.

(c)     Bridgestone and Bandag have negotiated entering into a joint venture, including a joint billing project.  These negotiations continue to the present day.

(d)     Bridgestone and Bandag have negotiated a potential acquisition of Bandag by Bridgestone.  Negotiations began in March 1999, formally concluded in December 1999, and informally continue to the present.

(e)     Bridgestone also responds by referring Michelin to:  BAN 4108418 through 4108422.

5.     Describe in detail any rules, guidelines, or other safeguards discussed or put in place governing the sharing of business information between Bandag and Bridgestone, including without limitation in connection with:

      a.     Any merger, sale or joint venture discussions;

      b.     Any joint marketing efforts or work together for any fleet customers (including without limitation Ryder);

      c.     Any joint marketing efforts or work together with respect to any commercial truck tires dealers;

      d.     Any work together on any joint billing projects;

      e.     Any work together on joint research and development or product development.

**ANSWER:**     In addition to its General Objections, Bridgestone objects to this interrogatory because it contains no time period restriction, is overly broad, is unduly burdensome, and seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or the joint defense privilege.  Bridgestone also objects to the term "work together" as vague and ambiguous.  Subject to its objections, Bridgestone states that any negotiations or

communications between it and Bandag have been in full compliance with all applicable statutes, regulations, and case law.

6.      Describe any and all joint sales or marketing efforts to fleet customers which you and Bandag considered or engaged in, including without limitation the identity of each such fleet customer, the nature and results of each such effort, and the identities or those persons principally involved in each such effort.

**ANSWER:**   In addition to its General Objections, Bridgestone objects to this interrogatory because it contains no time period restriction, is overly broad, and is unduly burdensome.

Subject to its objections, Bridgestone states that it conducts tens, if not hundreds, of thousands of sales calls each year.  From time to time, it has engaged in joint sales calls with Bandag to its and Bandag's mutual fleet customers, often at the fleets' request.  These joint sales calls include:

- Lilly Truck Leasing, involving Ray Angrilla, Dan Dennis, Fred Gralinski, and John Gaulocher of Bridgestone and Terry Shaw and Jim Croel of Bandag.  The sales call was not successful in winning back business that was lost when Michelin bought TCI and switched this fleet to MRT.

- Penske Truck Lease, involving John Ramaika of Bridgestone and Steve Brandt and Andy Sissler of Bandag.  The outcome of this sales call is pending.

- ToysRUs, involving Jim Vickers of Bridgestone and Steve Jacobs of Bandag.  This was a sales call on a fleet that was an Oliver/General user.  Bridgestone won the business following the sales call.

- Georgia Power, involving John McCormick of Bridgestone/Firestone and Ken Cole of Bandag.  This was a sales call requested by the dealer, Atlanta Commercial.  Firestone won the business for the location visited.

- Kohls Distribution, involving Bill Goddard of Bridgestone and Kyle Chen of Bandag.  The fleet, which was entirely Goodyear, requested that Bridgestone and Bandag make a joint presentation.  Neither Bridgestone nor Bandag were successful in gaining this fleet's business.

- Belle Tire Blitz, involving Kevin Whitsett of Bridgestone and Jim Stralka of Bandag.  Bridgestone and Bandag personnel assisted Belle's commercial expansion into Cleveland by conducting cold calls with Belle personnel to small fleets in Cleveland.

- Anderson Truck Service, involving Bill Busher of Bridgestone and Art Rivera of Bandag. The fleet requested a presentation by Bridgestone and Bandag as a countermeasure in response to a push by Michelin to sign a Team Agreement. This fleet did not sign a Team Agreement and continues to use tires from Michelin, Bridgestone, and Bandag.

- Star Leasing, involving Bill Phythyon of Bridgestone and Dan Bachorski of Bandag. The fleet requested that Bridgestone and Bandag make separate proposals regarding product application and performance. The results of this call are pending.

- Frozen Food Express ("FFE"), involving Ray Lane of Bridgestone and Hollis Harrington and Mike Poirier of Bandag. The fleet requested biannual maintenance inspections of its fleet. Bridgestone lost its business with FFE to Goodyear because Bridgestone was unable to provide one vendor billing on new tires, retread tires, and service. Lane, Harrington, Poirier, and Doug Ehrich met with FFE again to attempt to rebuild a relationship with the fleet.

- Lonestar Transportation, involving Ray Lane of Bridgestone and Hollis Harrington of Bandag. The fleet requested a meeting with Lane and Harrington regarding issues with specific tires.

- UPS, involving Gary Clark of Bridgestone and Doug Ehrich of Bandag. The call was an effort to maintain business in certain areas of Texas, but Bridgestone still lost the business to TCI/MRTI.

- Waste Management, involving Shane Poston of Bridgestone and Tom Sutton of Bandag. Strouhal Tire initiated two calls. The first call consisted of a fleet inspection to gather information, and the second call was successful in getting the business for Bridgestone and Bandag through Strouhal.

- KLLM, involving Mark Roe of Bridgestone and Brad Haddoxx of Bandag. This call resulted in KLLM discovering that several Goodyear retread and paperwork issues were resulting in lost money for KLLM. KLLM decided to test several Bandag caps.

- United Western Grocers, involving Rick Younkin of Bridgestone and Scott Perschbacher of Bandag. This call was made at the fleet's request because the fleet had a new maintenance manager. The call consisted of discussions of tread designs and recommendations for retreading and air pressures. The new fleet manager, who had prior experience with Bridgestone and Bandag, moved the fleet's business from Penske's maintenance program to Jubitz to be serviced with Bridgestone and Bandag tires.

- Interstate Brands Corp., involving Mark Stevens of Bridgestone, Jason Roanhouse of Bandag, and TDS representatives. The purpose of the call was to conduct a fleet inspection and detail the features and benefits of a certain tire.

- Carlile/K&W Transportation, involving Mark Stevens of Bridgestone, Scott Pershbacher and Rob Asheral of Bandag, and TDS representatives. On two different occasions, joint sales calls were made at this location. Bridgestone discussed its new tires, and Bandag discussed its retread tires.

- Merit, involving Shawn Bigham and Chad Rockafellow of Bridgestone, a Bandag representative whose name could not be recalled, and TDS representatives. TDS asked Bridgestone and Bandag representatives to make presentations. The Bridgestone presentation highlighted features and benefits of Bridgestone tires. Bandag's presentation focused on the benefits of their capping process. The business for this location was secured by TDS using Bridgestone new tires and Bandag retreading.

- North American Carriers, involving Steve Arnold and Ross Goodwin of Bridgestone, Rick Cicconi of Bandag, and a TDS representative. The fleet, which was completely Michelin, requested that a TDS representative bring in representatives from Bridgestone and Bandag to look at a tire policy to help the fleet reduce its cost per mile on tire purchases, retreads, and other related items. The call did not generate any business for the participants, and the fleet does not do business at this time with any of the attending parties.

- Waggoners Trucking, involving Jay Miller of Bridgestone and Steve Haugen and Bob Allardice of Bandag. This was a dinner meeting to introduce the fleet's new management and to determine the fleet's new tire and retread directions for the future. The fleet previously had used a small amount of retread tires, which were all Bandag, and new tires from several different manufacturers, including Bridgestone, Michelin, General, and Yokoahama. The fleet has since decided to test Bandag retreads and use only first-tier (Bridgestone and Michelin) new tires.

7.     Identify each commercial truck tire dealer about which Bridgestone communicated with Bandag since January 1, 1997 concerning that dealer's consideration or possible consideration of using a non-Bandag truck tire retreading system, and as to each such dealer describe in detail the nature and substance of the communications and the identities of those persons principally involved in the communications.

**ANSWER:**     In addition to its General Objections, Bridgestone objects to this interrogatory because it is overly broad, unduly burdensome, and seeks information protected by the joint defense privilege between Bridgestone and Bandag. Subject to its objections, Bridgestone states that its executives, including John Lampe, Singh Ahluwalia, and Rick Skinner, have from time to time communicated with Bandag executives, including Martin Carver and Sam Ferrise, regarding threats to their mutual distribution channels. At no time during these communications did Bridgestone and Bandag ever agree to exert any pressure or influence (including, without limitation, any threat not to do business with any dealer converting to the MRTI system) on any dealer that was considering conversion to the MRTI system.

8.      Identify each commercial truck tire dealer to which Bridgestone considered or provided any financial inducements, sales incentives, dealer programs, rebates, offers of free or discounted products or equipment, cash, financing, loans, or other consideration in return for a promise, undertaking, or understanding that such dealer would use or not use a retreading system offered by a particular manufacturer, franchisor, or licensor, and describe in detail the nature and circumstances of each such transaction, including without limitation the type and amount of such consideration, the dates of the discussions and/or negotiations, the substance of such discussions and/or negotiation, the justification or motivation for the transaction, any communications with Bandag regarding the transaction, and the identity of the persons principally involved.

ANSWER:   In addition to its General Objections, Bridgestone objects to this interrogatory because it contains no time period restriction, is overly broad, is unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to its objections, Bridgestone states that it regularly offers numerous tire programs to commercial truck tire dealers to have that dealer offer Bridgestone's new tire products.  Furthermore, Bridgestone never pressured any dealer to not switch to MRTI.  See e.g. Stankiewicz Decl. ¶ 8; Colvard Decl. ¶ 4.  In its ordinary practice, Bridgestone offers financial incentives to dealers that encourage and allow them to sell additional Bridgestone new tires.  Such financial assistance can, for instance, include capital expansion loans with interest forgiveness provisions that are tied to the number or share of Bridgestone tires that dealer sells.  Occasionally, this financial assistance helps the dealer resist Michelin's offers of financial inducements to, or threats of retaliation if a dealer does not (i) convert to the MRTI retreading system or (ii) sell its business to Michelin or TCI.

In the last 18 months, Bridgestone has provided financial assistance to the following dealers:  White Tire, Valley Tire, Cross-Midwest, Atlanta Commercial, Sumerel Tire, Service Tire, Zurcher Group, Snider, and Eastern Iowa Tire.  In May 2000, Bridgestone provided Larry DeHaven and Don Aldridge with a $17.5 million loan to purchase the stock of David White.  Bridgestone also provided to Mr. White $1.0 million in return for a non-compete agreement and

$0.5 million in consultant fees. Rick Skinner, Larry DeHaven, Don Aldridge, and David White were the principal persons involved. In June 2000, Bridgestone provided a $1.0 million loan and Flex Fund support to Valley Tire for cash flow support and to allow Valley to renovate its existing locations. Rick Skinner and Jim Stankiewicz were the principal persons involved. In February 2000, Bridgestone provided a $0.6 million short-term note to Cross-Midwest for the construction of a new warehouse. Bridgestone also offered a $1.5 loan to Cross-Midwest in 2000 in an effort to replace lost distribution options in Arkansas, but this loan has not been made. Rick Skinner and Greg Trum were the principal persons involved. In May 2000, Bridgestone provided Flex Fund support to Atlanta Commercial to lease a new building. Rick Skinner and Dennis Stough were the principal persons involved. In May 2000, Bridgestone provided Flex Fund support to Bob Sumerel for expansion of Sumerel Tire. Rick Skinner and Bob Sumerel were the principal persons involved. In 1999 and June 2000, Bridgestone provided Flex Fund support and a $1.7 million loan to Service Tire for the acquisition of Monaghan Tire. Rick Skinner and Ron Bennett were the principal persons involved. In May 2000, Bridgestone provided Flex Fund support to the Zurcher Group to upgrade dealers' service capabilities. Art Campagnoni and Paul Zurcher were the principal persons involved. In January 2001, Bridgestone provided a $1.8 million loan to Snider Tire for real estate consolidation. Rick Skinner and John Snider were the principal persons involved. In February 2000, Bridgestone provided Flex Fund support to Eastern Iowa Tire to transfer the GCR store in Des Moines, Iowa to Eastern Iowa Tire. Rick Skinner, Art Campagnoni and Gary VanBlaricom were the principal persons involved. Bridgestone did not discuss with Bandag the specifics of the financial assistance Bridgestone offered to any dealer.

9.     Identify any trucking fleets with which you have discussed retread truck tire systems other than any Bridgestone system, and as to each describe in detail the nature and substance of those communications, including without limitation the dates of the discussions, the reason for the discussions, any communications with Bandag regarding the discussions, and the identity of the persons principally involved in the discussion.

ANSWER:     In addition to its General Objections, Bridgestone objects to this interrogatory

because it contains no time period restriction, is overly broad, is unduly burdensome, and seeks

information that is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Subject to its objections, Bridgestone states that it has discussed other

retread tire systems with Ryder and Ruan, as described more fully in its Answer to Interrogatory

No. 11.


10.     Identify any trucking fleets where Bridgestone engaged in any type of testing of its own retread tires against Bandag retread truck tires from 1997 to the present, and as to each such fleet describe in detail the circumstances of such testing, including without limitation the date(s) of the testing, the nature and results of the testing, and the identities of those persons principally involved in such testing.

ANSWER:     In addition to its General Objections, Bridgestone objects to this interrogatory

because it is overly broad, unduly burdensome, and seeks information that is irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence.  Subject to its objections,

Bridgestone states that its retread tires were tested for the H.E.B. Grocery trucking fleet.  Such

testing took place in 1997 and 1998 and was monitored by the General Manager of the Treadco

location in San Antonio, Texas, Lupe Padilla, and Rey Reyes of H.E.B.  The retread tires were

tested over the course of one year to determine the number of failed tires and the miles per thirty-

second, an indication of tread wear.  The testing resulted in Oncor tires having less failures and

more miles per thirty-second.


11.     Identify all trucking fleets that you contend have requested that you work together with Bandag in connection with supplying replacement tires and/or tire management services,

and describe in detail the nature and substance of any such communications and the identity of those persons principally involved in the communications.

__ANSWER:__    In addition to its General Objections, Bridgestone objects to this interrogatory because it contains no time period restriction, is overly broad, is unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to its objections, Bridgestone states that when fleets request it, Bridgestone and Bandag work together to assist fleets in reducing their costs-per-mile by integrating their new and retread tire purchases, maintenance, repairs, and emergency roadside assistance. Specifically, Bridgestone and Bandag have provided such services to Ryder and Ruan.  Ike Luna, Group Manager -- Maintenance for Ryder, informed Bridgestone and Bandag that he expected Bridgestone and Bandag to work together to improve their service to Ryder.  See Luna Decl. ¶ 7.  In late 1997, at Ryder's request, Ryder, Bridgestone, and Bandag developed the Total Tire Management program.  See id. at ¶ 9.  Ruan asked Bridgestone and Bandag to work together in order to reduce Ruan's running costs.  Ruan also requested that Bridgestone participate in Ruan's quarterly meetings that it conducted with Bandag.


12.    Describe in detail the terms of any joint defense agreement between you and Bandag relating to this litigation.

__ANSWER:__    In addition to its General Objections, Bridgestone objects to this interrogatory because it seeks information that, if it exists, is protected by the attorney-client privilege, the attorney work-product doctrine, and/or the joint defense privilege.


13.    Identify each person or entity with whom you have had communications concerning that person or entity adopting or using the "Oncor" retread tire system, and describe in detail the substance of any such communications and the identity of the persons principally involved in such communications.

ANSWER:    In addition to its General Objections, Bridgestone objects to this interrogatory because it contains no time period restriction, is overly broad, is unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to its objections, Bridgestone states that other than its communications with Treadco prior to the signing of an agreement between Treadco and Bridgestone in November 1994, Bridgestone has not had communications with any person or entity concerning that person or entity adopting or using the "Oncor" retread tire system.

     14.    For each year that the "Oncor" retreading facility in St. Louis has operated, identify:

     a.    The total number of retread truck tires produced by this facility:

     b.    The total amount of sales of tread rubber by Bridgestone to this facility; and

     c.    The total amount of sales of retread truck tires produced at this facility.

ANSWER:    In addition to its General Objections, Bridgestone objects to this interrogatory because it is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to its objections, Bridgestone states that:

     a.    The total number of Oncor retread truck tires produced is as follows:

     1998:  19,940 tires

     1999:  39,564 tires

     2000:  43,650 tires

     2001:  8647 tires as of March 31, 2001

     b.    The total amount of sales of tread rubber by Bridgestone to Oncor is as follows (note that Bridgestone does not have an accurate response before 1999):

1999:  $1,262,275 32

2000:  $819,944.08

2001   $159,426.18 as of March 31, 2001

    c.    The total amount of sales of retread truck tires produced at the Oncor

facility is as follows:

1998:  $3,216,000

1999:  $4,906,000

2000:  $5,167,000

2001:  $1,481,000 as of March 31, 2001

    15.    Identify each document you intend to introduce and each witness you intend to call to testify at the fact witness phase of the preliminary injunction hearing, stating as to each witness the substance of the testimony you expect that witness to provide.

**ANSWER:**    Bridgestone has not yet determined the documents, if any, it will introduce nor the

witnesses, if any, it plans to call at the fact witness phase of the preliminary injunction hearing.

However, Bridgestone will supplement its answers as its investigation continues.

Respectfully submitted,

Dated:  April 10, 2001

Thomas P. McNulty
Megyn M. Kelly
Michael P. Manly
JONES, DAY, REAVIS & POGUE
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
(312) 782-3939

ATTORNEYS FOR THIRD-PARTY
DEFENDANT
BRIDGESTONE/FIRESTONE, INC.

Of Counsel:

Martin H. Katz
Stephen T. Fieweger
Katz, Huntoon & Fieweger, PC
200 Plaza Office Building
1705 Second Avenue
P.O. Box 3250
Rock Island, Illinois 61204-3250

## VERIFICATION

Richard L. Skinner, being first duly sworn on oath, deposes and states that he is the Director of Commercial Tire Marketing for U.S. Commercial Tire Co., a wholly-owned subsidiary of Bridgestone/Firestone, Inc., that he has read the above and foregoing Answers and Objections to Michelin's Interrogatories, and that the matters and facts contained therein are true and correct to the best of his knowledge, information, and belief. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Richard L. Skinner_   4/10/01

Richard L. Skinner
on behalf of Bridgestone/Firestone, Inc.

Subscribed and Sworn to before
me this _10th_ day of April, 2001

_Patricia A. Ray_
Notary Public

PATRICIA A. RAY
NOTARY PUBLIC
AT LARGE
DAVIDSON COUNTY, TENN.
My commission expires Nov. 24, 200_

## CERTIFICATE OF SERVICE

The undersigned further certifies that the foregoing instrument was served upon all parties to the above cause to each of the following attorneys of record herein at their respective addresses via U.S. Mail and facsimile disclosed on the pleadings on the 10th day of April, 2001, by:

Emmet V. Bondurant
BONDURANT MIXSON & ELMORE, LLP
1201 W. Peachtree Street, NW
Suite 3900
Atlanta, GA  30309
Fax:  404-881-4111

Adam L. Hoeflich
BARTLIT, BECK, HERMAN,
PALENCHAR & SCOTT
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, IL  60610
Fax:  312-494-4440

Melinda F. Levitt
FOLEY & LARDNER
3000 K Street, NW
Washington, DC  20007
Fax:  202-672-5399

Edward W. Remsburg
AHLERS, CONNEY, DORWEILER,
HAYNIE SMITH & ALLBEE, P.C.
100 Court Avenue, Suite 600
Des Moines, IA  50309-2231
Fax:  515-243-2149

David J. Meloy
STANLEY, LANDE & HUNTER
900 Firstar Center
201 West Second Street
Davenport, IA  52801
Fax:  319-263-8775

Thomas E. Gilbertsen
COLLIER SHANNON SCOTT, PLLC
3050 K Street, NW, Suite 400
Washington, D.C.  20007
Fax:  202-342-8451

Ronald T. Coleman, Jr.
Brian Sullivan
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
600 Peachtree Street, Suite 2400
Atlanta, GA  30308
Fax:  404-815-2424

David B. Fein
WIGGIN & DANA
Three Stamford Plaza
301 Tresser Blvd.
Stamford, CT  06911
Fax:  203-363-7676

J. Patrick McDavitt
BRIGGS & MORGAN
2400 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Fax:  612-334-8650

_____
Gregory S. Olsuka

# Exhibit D

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

BANDAG, INCORPORATED,                          )
an Iowa corporation,                           )
                              Plaintiff,        )
                                               )
vs.                                            )
                                               )
MICHELIN RETREAD                               )
TECHNOLOGIES, INCORPORATED,                    )
a Delaware Corporation and                     )
MICHELIN NORTH AMERICA,                        )
INCORPORATED, a New York                       )
Corporation, et al.                            )        Civil Action No. 3-99-CV-80165
                                               )
                              Defendants.       )
                                               )
MICHELIN RETREAD                               )
TECHNOLOGIES, INCORPORATED,                    )
MICHELIN NORTH AMERICA,                        )
INCORPORATED,                                  )
                              Counterclaimants, )
                                               )        **Bandag's Responses to Michelin's**
                                               )        **Third Set of Interrogatories**
                                               )
vs.                                            )
                                               )
BANDAG, INC.,                                  )
                              Counterdefendant, )
                                               )
and                                            )
                                               )
BRIDGESTONE/FIRESTONE, INC.,                   )
                      Third Party Defendant.    )

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff/Counterdefendant

Bandag, Inc. ("Bandag"), through its attorneys, hereby responds to Michelin's Third Set of

Interrogatories as follows:



TRIAL EXHIBIT
4651

## General Objections

Bandag hereby sets forth the following General Objections, which shall be deemed applicable to all of the Michelin's Third Set of Interrogatories without the need to further repeat or recite them in responding to each Request.

1.  Bandag objects to each interrogatory to the extent that it seeks disclosure of the content of communications between Bandag and its legal counsel on the ground that such information is protected by the attorney-client privilege.

2.  Bandag objects to each interrogatory to the extent that it seeks information or documents prepared in anticipation of litigation on the ground that such information and documents are protected under the work-product doctrine.

3.  Bandag objects to each interrogatory to the extent that it seeks information protected by the joint defense privilege between Bandag and Bridgestone.

4.  Bandag objects to each interrogatory to the extent that it seeks information from or are intended to place on Bandag obligations beyond those required by the Federal Rules of Civil Procedure.

5.  Bandag objects to each interrogatory to the extent that it seeks information from or relating to any of Bandag's subsidiaries, including Tire Distribution Services, Inc. ("TDS") or Tire Management Services, Inc. ("TMS")

6.  Bandag reserves the right to supplement these responses to the extent that Bandag obtains additional information during the pendency of this case.

7.  Bandag incorporates by reference each its General Objections into each interrogatory response below

2

Specific Responses

1. If your response to any one of Michelin's accompanying Requests for Admission was anything other than an unqualified admission, then separately for each such response explain in detail the basis for your denial or qualification, and identify all persons who could testify under oath as to the facts supporting your denial or qualification.

RESPONSE: Bandag objects to this interrogatory as overbroad and unduly burdensome.

Subject to its objections, Bandag responds that the bases for Bandag's denials and qualified admissions of Michelin's Requests for Admission are contained in Bandag's responses to those requests. Bandag also incorporates by reference the facts and arguments set forth in Bandag's Resistance to Michelin's Motion for Preliminary Injunction.

Persons who could testify to the facts supporting Bandag's denial(s) and qualification(s) include Martin Carver, Sam Ferrise, Andy Sisler, and, in all likelihood, any other person who is familiar with the North American commercial truck tire business, including employees of Michelin and Bridgestone.

2. Identify the person or persons who authored or otherwise prepared the following documents: BAN 028476-028483, BAN 9023395, BAN 9023419-9023422, BAN 9044964-9044966, and BAN 9044975-9044981.

RESPONSE:

BAN 028476-483: Becky Allgood is the author.

BAN 9023395: John McErlane is the author.

BAN 9023419-422:
   419: John McErlane prepared the top half of this page and wrote the corresponding notes.
   420-421: John McErlane's notes.
   422: Andy Sisler prepared the agenda. John McErlane's notes.

BAN 9044964-966
   964: Bev Ash created the agenda.
   965-966: Bandag has been unable to determine the author of these pages.

BAN 9044975-981
   975-976: Bandag has been unable to determine the author of this agenda
   977-981: Andy Sisler's notes.

3

3.   Describe in detail any formal or informal agreements, arrangements, joint ventures, joint marketing or distribution programs, or any other forms of collaboration, cooperation, or business relationship of any kind with Bridgestone (excluding any business relationships as to TDS, TMS, or GCR), including without limitation the nature and substance of each such business relationship and the persons most knowledgeable about each such business relationship.

RESPONSE:  Bandag objects to this interrogatory as overbroad and unduly burdensome because it contains no time period limitation.  Subject to its objections, Bandag responds that:

Bandag and Bridgestone entered into agreements dated September 21, 1999 and addendum dated November 5, 1999.  See, e.g., BAN 9048612-15, BAN 4108427-22.

As it had done with Michelin in the 1990s, Bandag has cooperated with Bridgestone in many ways over the years.  This cooperation has included, without limitation:

a.   At the request of Ryder, Ruan, and other mutual dealer and fleet customers, Bandag and Bridgestone continue to work together to offer integrated tire management services for the benefit of the fleet.  The products and services that Bandag and Bridgestone offer these accounts are similar to the vertically integrated offerings by Michelin and Goodyear.  Persons most knowledgeable about the Ryder Total Management Program are Steve Haugan, Mike Missen, Jim Whipple of Bandag, Abe Gal, Pete Young, George Brown, Dick Baker, Frank Gassner of Bridgestone, and Ike Luna, Andy Stefanick, Jim Law of Ryder.  Persons most knowledgeable about the Ruan account include: Art Rivera of Bandag, Paul Carlson of Bridgestone, and Chad Johnson, Terry Solvedt of Ruan.

b.   Bandag and Bridgestone are working on the logistics of a possible joint venture to offer joint billing to mutual fleet customers, a service that Michelin and Goodyear are currently selling to customers.  Persons most knowledgeable about joint billing: Mark Winkler and Troy Fridley from Bandag, and Dennis Jones from Bridgestone.

c.   From March 1999 until late 1999, Bandag negotiated a possible sale of Bandag to Bridgestone.  Persons most knowledgeable: Martin Carver of Bandag, and John Lampe of Bridgestone.  The parties continue to discuss informally the possibility of a Bandag/Bridgestone joint venture and/or merger.

d.   Bandag has had several discussions over the years concerning the retreadibility of Bridgestone's casings.  Two recent examples are: (a) Bridgestone asked Bandag to determine if Bandag could offer a fuel-efficient retread to complement Bridgestone's fuel-efficient tires.  Persons most knowledgeable: Mark Davison and Martin Carver of Bandag, and Mike Fujimura of Bridgestone; (b) Bridgestone asked Bandag to determine whether a new Bridgestone product offering (extra wide tires) could be retreaded.  Bandag tested Bridgestone's extra wide tires and determined that they could be successfully retreaded.  Persons most knowledgeable: John McErlane and Lyle Haylen of Bandag, and Rick Skinner and Kurt Danielson of Bridgestone.

4

c.  Bandag and Bridgestone have communicated for many years about common dealers, fleet customers, or other issues of common interest.  While Bandag and Bridgestone cooperated in terms of keeping each other informed about such issues, each company has always acted independently in their own best interests.  For the nature of these discussions and identities of the persons most knowledgeable about them, *see, e.g.*, BAN 9040623-26; BAN 9041241-81; BAN 9041990-93; BAN 9046748; BAN 9046762-64; BAN 9024221-25, BAN 9024300-03, BAN 9105616-17, BAN 9024191-99, BAN 9040273-74, BAN 9040261-71, BAN 9040219-223, BAN 9044920-22, BAN 9129620-21, BAN 9044975-76, BAN 9052709, BAN 9044975-81, BFS 000980-1002, BFS 005035-36, BAN 9036784-90, BFS 000884, BFS 000887-89, BAN 9044983-84, BFS 000885-86, BFS 000890-91, BFS 000893, BAN 9044964-66, BAN 9044967-72, BFS 004562, BAN 201837-81, BFS 004007; BFS 004735-814. BAN 9145357, BAN 9036766-67, BAN 9036768-69, BAN 9044924-25, BAN 9045089, BAN 9147670-75, BAN 9031405, BAN 9045035, BFS 9023409-11, BAN 9023430, BAN 9023403-04, BAN 9115620-27, BAN 9115653-55, BAN 9115644, BAN 0706158-175, BAN 9023431, BAN 9115673, BAN 9039629-678, BAN 9023434, BAN 9115676-77, BAN 9145346-47, BAN 9145357, BAN 9044291-94, BAN 9115678, BAN 0923382-83, BAN 9145518-19, BAN 9023419-22, BFS 003984-86, BFS 003978-80, BAN 9145596, BAN 9115669-70, BAN 9023394-95, BAN 9145185-86, BAN 9145588-89, BAN 9145596, BAN 9115639 BAN 9045139, BAN 9023381-83, BAN 9023394-95, BAN 9108244-47, BAN 9145233, BAN 9023392, BAN 9115628-29, BAN 9104353, BAN 9145261, BAN 9039820-33, BAN 9145265-69.

4.  Describe in detail any rules, guidelines, or other safeguards discussed or put in place governing the sharing of business information between Bandag and Bridgestone, including without limitation in connection with:

    a.    Any merger, sale, or joint venture discussions;

    b.    Any joint marketing efforts or work together for any fleet customers (including without limitation Ryder);

    c.    Any joint marketing efforts or work together with respect to any commercial truck tires dealers;

    d.    Any work together on any joint billing projects;

    e.    Any work together on joint research and development or product development.

**RESPONSE:** Bandag objects to this interrogatory as overbroad and unduly burdensome because it contains no time period limitation.  Subject to its objections, Bandag responds that it has entered non-disclosure agreements, such as those referenced in Bandag's response to Interrogatory No. 3.  Also, as Michelin had done in 1999, while it was considering a possible purchase or joint venture with Bandag, Bridgestone signed a Confidentiality Agreement governing the Bandag's confidential, proprietary documentation made available during Bridgestone's due diligence review.

5

5.  Describe any and all joint sales or marketing efforts to fleet customers which you and Bridgestone have considered or engaged in, including without limitation the identity of each such fleet customer, the nature and results of each such effort, and the identities of those persons principally involved in each such effort.

RESPONSE: Bandag objects to this interrogatory as overbroad and unduly burdensome because it contains no time period limitation. Over the years, fleets have requested that Bandag and Bridgestone make these sales calls jointly. On other occasions, Bandag and Bridgestone have approached mutual dealers or fleet customers in an attempt to offer the same or better products and services than Michelin and Goodyear can offer alone. These joint sales efforts have included, without limitation:

Penske Truck Lease

- Steve Brandt and Andy Sisler of Bandag, John Rameka and Tom Roznk of Bridgestone, and Bob Douglas and Ken McKibben of Penske.

- Have discussed ways in which Penske would like Bandag and Bridgestone to work together, including through joint billing. Bandag and Bridgestone currently supply Penske with some of its new and retread tires, but Penske is still undecided about whether to make Bandag and Bridgestone major suppliers. Discussions are ongoing.

Waste Management

- Strouhal Tire had asked for Bandag and Bridgestone to conduct a fleet inspection. A follow-up meeting resulted in Bandag and Bridgestone getting Waste's business through Strouhal Tire. Vince Fortuna has also asked Bandag and Bridgestone to provide joint billing to Waste Management. Persons most knowledgeable about this account are Tom Sutton of Bandag and Shane Poston of Bridgestone.

UPS

- In early 2001, Doug Ehrich of Bandag and Gary Clark of Bridgestone met with Dan Martin at UPS. Bandag's main purpose was to try to resolve certain billing issues that arose with TDS. Secondarily, Bandag and Bridgestone sought to obtain more UPS business in Texas.

- The billing issue was resolved by crediting UPS. Bandag and Bridgestone did not get the business from UPS. The business went to TCI/MRTI.

- Jerry DiCinlio of UPS has asked Bandag to work closely with new tire manufacturers such as Bridgestone. UPS has also asked Bandag and Bridgestone to train UPS's

6

mechanics at 16 of their trailer shops in the U.S. and to participate in a tire evaluation test.

Toys R Us

- In February 2001, at the request of Buddy Holloman of Snider Tire, Steve Jacobchick of Bandag, and Jim Vickers of Bridgestone performed a tire survey for Toys R Us. (This is one example of tire surveys that fleets have asked Bandag and Bridgestone to perform.)

- Toys R Us has agreed to test certain industrial Bandag retreads.

Metropolitan Trucking

- At the request of a tire dealer (Scott Bennett of Service Tire Truck Centers), Steve DeFranco of Bandag and Tim Kane and Dave Hollifield of Bridgestone gave a joint presentation to Joe Mungino, Jr. and Wayne Baudry of Metropolitan Trucking.

- Metropolitan is still interested in pursuing a cradle to grave tire program with Bandag and Bridgestone.

Georgia Power

- In approximately early 2001, at the request of Larry Lindsey of Atlanta Commercial, Ken Cole of Bandag and John McCormick of Bridgestone met at Georgia Power's Ponce De Leon facility in Atlanta to discuss their respective products and services.

- In December 2000, at the request of Harry Manning of Macon Commercial Tire, Ken Cole of Bandag and Jerry Hays of Bridgestone met with Jerrell Cobb of Georgia Power's Tiston, Georgia facility to discuss their respective products and services.

- Bandag earned more business from Georgia Power.

Ameriquest

- At the request of Doug Clark of Ameriquest, Steve DeFranco, Don Mead (formerly) of Bandag and John Romaka of Bridgestone met with Ameriquest to discuss cradle to grave services and joint billing.

- The fleet currently holds quarterly meetings which Bandag and Bridgestone are expected to (and do) attend.

Andersen Truck Service

- In mid-2000, at the request of Dewey Johnson of Royal Tire, Art Rivera of Bandag and Bill Busher of Bridgestone met with Jacob Wood, Steve Psyck, William Curtis of Andersen Truck Service.

7

- Andersen was interested in a possible new tire/retread package to be put together by Bandag and Bridgestone. During the meeting, it became clear that Andersen also interested in TMS's products and services. It wanted to have certainty concerning its cost per mile.

- Mark Wilson of TMS continues to try to get business from Andersen. Goodyear is currently Andersen's supplier of new and retread tires.

## Perdue Farms

- At the request of Jack Riebe of Perdue Farms, Jim Croll of Bandag and Steve Brandt, formerly with Bridgestone (currently with Bandag) have held sales meetings and have otherwise worked together to lower the fleet's operating costs.

- Bandag and Bridgestone have a high percentage of Perdue's new tire and retread business.

## Maersk Sealand

- Steve Brandt of Bandag, and Bob Joyce of Bridgestone met with Richard Derosa, Tyrone Leak, Pat Harmon, Tommy Hilton of Maersk Sealand in response to Mr. Derosa request for "one stop shopping."

- Bandag and Bridgestone did not get the program.

## Star Leasing

- At the request of Larry Faux of Star Leasing, Dan Bachorski of Bandag and Bill Phython of Bridgestone each made presentations and proposals concerning their respective products.

- Previously, Michelin had made the following sales pitch to Star Leasing: if Star Leasing buys 400-500 new tires at certain price, Michelin will give Star Leasing the opportunity to buy approximately 500-600 retreads at $55-60 per tire, which is far below the market price for retreads. Star Leasing asked Bandag to coordinate with Bridgestone to respond to Michelin's offer. Bandag and Bridgestone made separate pricing proposals and explained how the two companies could work together to meet the fleet's tire management needs.

- To date, Star Leasing has not made a decision.

## Frozen Food Express

- At the request of Harold Dudley of Frozen Food Express, Hollis Harrington, Mike Poirier, and Doug Ehrich of Bandag, and Ray Lane and Tim Able of Bridgestone met

‡

with Frozen Food Express.

- Bandag and Bridgestone tried to get business back that they both lost to Goodyear. Both companies described their respective products and services. Both companies have also performed semi-annual maintenance inspections of this fleet.

- Bandag and Bridgestone did not get the fleet's business because, among other reasons, the fleet demanded one invoice for their tire management needs. The fleet decided to use Goodyear for their new and retread tire needs.

- Bandag and Bridgestone continue to try to earn business from this fleet.

Lonestar Transportation

- At the request of Garland Brown of Lonestar Transportation, Hollis Harrington of Bandag and Ray Lane of Bridgestone attended several meetings to discuss the fleet's tire needs, out of service causes, and to determine the best course of action to reduce the fleet's tire costs.

- Bandag retained some of the business but also lost some business to Goodyear.

Belle Tire, Inc.

- In early 2000, at the request of Ray Seitz of Belle Tire, Jim Stralka of Bandag, and Kevin Whitsett (and one or two others) of Bridgestone, participated in a "sales blitz" announcing the opening of Belle Tire's Cleveland facility. Bandag, Bridgestone, and Belle Tire made several hundred cold calls to many different fleets describing Belle Tire's products and services. Michelin was invited to participate but declined to do so.

- The results varied by fleet. Some fleets have decided to work with Belle Tire, others have not.

Waggoners Trucking

- In March 2001, Steve Haugan and Bob Allardice of Bandag, and Jay Miller of Bridgestone had a dinner meeting with representatives of Waggoners Trucking.

- Waggoners Trucking introduced their new management.

- Waggoners has agreed to test certain Bandag retreads.

North American Carriers

- At the request of Dave Andersen of Schoettler Tire (now an MRTT franchisee), Rick Cecconi of Bandag, Don Reinholz of TDS, and Ross Goodwin of Bridgestone met with North American Carriers.

9

- Bandag and Bridgestone gave presentations about their respective products and services. Michelin had solicited Schoettler to sign Michelin's Team Agreement.

- Bandag and Bridgestone did not get the business.

Unified Western Grocers

- At the request of George Dobratz, a new Transportation Vice President of Unified Western Grocers, Scott Perschbacher of Bandag, Rick Younkin of Bridgestone, and Ralph Chapman of Jubix Tire and Retreading met with Mr. Dobratz.

- Bandag and Bridgestone discussed Unified's tire program and examined the condition of the fleet's tires.

- No decision has been made concerning Unified's use of Bandag's retreads.

Carlile/K&W Transportation

- Dan Teser of TDS, Scott Perschobacher and Rob Asheral of Bandag, Mark Stevenson of Bridgestone, met with John McDonald of Carlile.

- Bandag and BFS discussed their respective products and services.

- Bandag continues to do business with the fleet.

Kohl's Distribution

- In late 1999, at the request of Chris Lyneis of Kohl's, Kyle Chen of Bandag and Bill Gollard of Bridgestone met with Mr. Lyneis.

- Bandag and Bridgestone discussed their respective products and services.

- Neither Bandag nor Bridgestone got the business.  Goodyear continues to supply new tires and retreads to Kohl's.

KLLM

- In the summer of 2000, Rodney Broom of TDS, Brad Haddox of Bandag, Mark Roe and Tony Reith of Bridgestone surveyed certain KLLM scrap tires and conducted a fleet survey.

- Neither Bandag nor Bridgestone got the business.  Goodyear continues to supply new tires and retreads to KLLM.

10

Interstate Brands Corp.

- In March 2001, at the request of Don Dabner of Interstate Brands, Jason Roanhouse of Bandag, Mark Stevens of BFS, and Tim Sullivan of TDS performed a tire survey. Subsequently, Bandag presented the findings of the survey. Bridgestone was not present for the presentation.

- Interstate Brands continues to buy retreads from Bandag and new tires from Bridgestone.

6.  Describe in detail all agreements, arrangements, or other types of actual or potential business relationships between Bandag and Bridgestone that were presented to or discussed with the Bandag Board of Directors, as well as the action taken by the Board as to any such business relationships.

RESPONSE:  Bandag objects to this interrogatory as overbroad and unduly burdensome.

Subject to its objections, any agreements, arrangements, or other types of business relationships

between Bandag and Bridgestone that were presented to or discussed with Bandag's Board of

Directors are identified in the minutes of those meetings that Bandag has already produced to

Michelin in this case.  For example, several of the minutes of Board meetings held in 1999

reflect discussions about the potential sale of Bandag to Bridgestone.  See, e.g., BAN 304062-71,

BAN 304073-74, BAN 304078-80, BAN 304083.

7.  Identify each commercial truck tire dealer about which Bandag communicated with Bridgestone since January 1, 1997 concerning that dealer's consideration or possible consideration of using a non-—Bandag truck tire retreading system, and as to each such dealer describe in detail the nature and substance of the communications and the identities of those persons principally involved in the communications.

RESPONSE:  Bandag objects to this interrogatory as overbroad and unduly burdensome

because it contains no time period limitation.  Subject to its objections, Bandag responds that

Bandag and Bridgestone have communicated for many years about common dealers, or other

issues of common interest such as whether a mutual distribution outlet was at risk to converting

to an integrated supplier.  Bandag's and Bridgestone's discussions about dealers who were

considering the use of a non-Bandag retreading system are reflected in documents cited in

Bandag's response to Interrogatory No. 3.

11

8.   Identify all trucking fleets that you contend have requested that you work together with Bridgestone in connection with supplying replacement tires and/or tire management services, and describe in detail the nature and substance of any such communications and the identity of those persons principally involved in the communications.

RESPONSE: Bandag objects to this interrogatory as overbroad and unduly burdensome because contains no time period limitation.  Subject to its objections, Bandag responds that several fleets have asked Bandag and Bridgestone to combine their product offerings and services in order to reduce the fleets' tire running costs.  The largest of these fleets are Ryder and Ruan.  For Ryder, Bandag and Bridgestone are part of Ryder's Total Tire Management Program. Under this program, Bandag and Bridgestone train dozens of dealers across the U.S. who service Ryder's needs.  Bandag and Bridgestone work closely with the dealers to observe and analyze Ryder's fleet performance, and to provide tires, repairs, service, and technical support to Ryder. Ryder has also asked Bandag and Bridgestone to submit a single invoice that would reduce Ryder's administrative costs and clerical errors.  The principal individuals involved in Ryder's program are Ike Luna of Ryder and Steve Haugen of Bandag.

Similarly, Ruan has asked Bandag and Bridgestone to work together to reduce Ruan's tire running costs.  Ruan set up a Mega Task Force Group with a representative of every Ruan supplier, including Bandag, Bridgestone, and Michelin.  The Task Force has met semi-annually since 1982.  The goal of the Task Force has been to lower Ruan's tire costs.  Bandag and Bridgestone also attend meetings of the Ruan/Bandag Tire Alliance Group, which meets at least quarterly and occasionally reports to the Mega Task Force Group.  Persons The individuals principally involved in Ruan's program are Chad Johnson of Ruan, Art Rivera of Bandag, and Paul Carlson of Bridgestone. After Bauer Built converted to Michelin, Ken Pendeluna, Ruan's former Vice President of Purchasing, asked Bandag and Bridgestone to get together to propose a new tire/retread combo program.

12

In addition to Ryder, Ruan, and many of the fleets identified in Bandag's response to Interrogatory No. 5, other fleets who are interested in Bandag and Bridgestone working together to supply tire management services and/or joint billing include without limitation: (1) National Lease (Art Rivera of Bandag), (2) Ideal Lease (Art Rivera of Bandag, Ken Johnson of Bridgestone, and Wade Lucas of IdealLease), (3) Pepsi (Steve DeFranco of Bandag, Ralph Schatz of Pepsi), (4) Frozen Food Express (Mike Poirier of Bandag, Greg Hart of FFE), (4) Central Freight Lines (Mike Poirier of Bandag, Hugh Camp of CFL), (5) Refrigerated Transport Inc. (Mike Poirier of Bandag, Lee Butler of RTI), (6) Chemical Express (Mike Poirier of Bandag, Joe Burnett of CE), and (7) Covenant Transportation (John Weldon of Bandag, Jeff Zayre of Bridgestone, Vance Miller of CT).

9. Describe in detail the terms of any joint defense agreement between you and Bridgestone relating to this litigation.

RESPONSE:  Bandag objects to this interrogatory because it seeks information which, if it existed, would be protected by the attorney work-product doctrine.

13

As to the Objections,
April 10, 2001

BARTLIT BECK HERMAN
PALENCHAR & SCOTT
Donald E. Scott
Adam L. Hoeflich
Courthouse Place
54 West Hubbard Street
Chicago, IL 60610
Telephone: (312) 494-4400
Fax: (312) 494-4440

STANLEY, LANDE & HUNTER
David J. Meloy
Rachel R. Watkins Schoenig
900 Firstar Center
201 West Second Street
Davenport, IA 52801
Telephone: (319) 324-1000
Fax: (319) 326-6266

ATTORNEYS FOR PLAINTIFF
BANDAG, INCORPORATED

14

APR-12-01  13:45  From:HARTLIT,BECK,HERMAN,PALENCHAR&SCOTT                3124844443              T-458  P.02/02  Job-003

## VERIFICATION

Andy Sisler, being duly sworn under oath, deposes and says that he has read the
foregoing Responses to Michelin's Third Set of Interrogatories and that the statements
therein are true and correct to the best of his knowledge, and based on information
provided by others.

Andy Sisler

Subscribed and sworn to before me this _10th_ day of April, 2001

Stephanie R. Jake
Notary Public

APR 10 2001 16:22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was served upon all parties to the above cause to each of the following attorneys of record herein at their respective addresses disclosed on the pleadings on the 10th day of April, 2001, by facsimile and regular mail.

Edward W. Remsburg, Esq.
Ahlers, Cooney, Dorweiler, Haynie,
Smith & Allbee, PC
100 Court Avenue, Suite 600
Des Moines, IA 50309-2231
Facsimile: 515/243-2149

Emmet J. Bondurant, II, Esq.
H. Lamar Mixson, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 W. Peachtree Street, N.W.
Atlanta, GA 30309
Facsimile: 404/881-4111

Ronald T. Coleman, Jr., Esq.
Brian D. Sullivan, Esq.
William K. Whitner, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308-2222
Facsimile: 404/815-2424

Thomas Gilbertson, Esq.
Collier Shannon Scott, PLLC
Washington Harbour,
Suite 400
3050 K Street, N.W.
Washington, DC 20007-5108
Facsimile: 202/342-8451

Marvin H. Katz, Esq.
Stephen T. Fieweger, Esq.
Katz, Huntoon & Fieweger P.C.
1705 Second Avenue
P.O. Box 3250
Rock Island, IL 61204-3250
Facsimile: 309/788-5688

Thomas P. McNulty, Esq.
Megyn M. Kelly, Esq.
Michael P. Manly, Esq.
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, IL 60601-1692
Facsimile: 312/782-8585

Andrew U. Goldman, Esq.

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

BANDAG INCORPORATED,                    CONFIDENTIAL
an Iowa corporation,


            Plaintiff,

vs.                                     CIVIL NO.
                                        3-99-CV-80165

MICHELIN RETREAD TECHNOLOGIES,
INCORPORATED, a Delaware corporation
MICHELIN NORTH AMERICA, INCORPORATED
a New York corporation; MICHELIN
CORPORATION, INC., a New York
corporation; COMPAGNIE GENERALE DES
ETABLISSEMENTS MICHELIN, a French
corporation; and COMPAGNIE
FINANCIERE MICHELIN, a Swiss
corporation,


            Defendants,


MICHELIN RETREAD TECHNOLOGIES
INCORPORATED and MICHELIN NORTH
AMERICA, INCORPORATED,


            Counterclaimants,

vs.
BANDAG, INC. and
BRIDGESTONE/FIRESTONE, INC.


            Counterdefendants.


DEPOSITION OF ROY STOGNER
December 19, 2001
10:53 a.m.
Neal & Harwell
150 Fourth Avenue North, Suite 2000
Nashville, Tennessee
Jerri Porter, RPR, CSR

```
 1    APPEARANCES:
 2    For Bandag, Incorporated:
 3            Naomi B. Graubard
              Wiggin & Dana
 4            400 Atlantic Street
              P.O. Box 110325
 5            Stamford, Connecticut  06911-0325
              (203) 363-7600
 6
 7    For Michelin:
 8            MICHAEL R. CARITHERS, JR.
              Collier Shannon Scott
 9            3050 K Street, NW, Suite 400
              Washington, DC  20007-5108
10            (202) 342-8896
11
12    For Bridgestone/Firestone:
13            MICHAEL P. MANLY
              Jones, Day, Reavis & Pogue
14            77 West Wacker
              Chicago, Illinois  60601-1692
15            (312) 782-3939
16
17
18
19
20
21
22
23
24
25
```

1                       I N D E X

2              INDEX OF EXAMINATIONS

3                                        Page/Line

4    By Mr. Carithers ....................    6    20

5    By Mr. Manly ......................   261    15

6

7

8              INDEX OF EXHIBITS

9                                        Page/Line

10   No. 1 .............................    72     6

11   No. 2 .............................   125     2

12   No. 3 .............................   135    20

13   No. 4 .............................   170     9

14   No. 5 .............................   182     7

15   No. 6 .............................   186    16

16   No. 7 .............................   190    22

17   No. 8 .............................   200    23

18   No. 9 .............................   205    17

19   No. 11 ............................   219    11

20   No. 12 ............................   224    21

21   No. 13 ............................   231     2

22   No. 14 ............................   232    11

23   No. 15 ............................   233    17

24   No. 16 ............................   234     9

25   No. 17 ............................   239    20

Case 4:02-cv-40204-JEG  Document 775  Filed 05/14/02  Page 88 of 132

Page 108

Bandag vs. Michelin                    Ray Stogner                    12/19/2001

1    Calls for speculation, foundation.

2              THE WITNESS:  Kurt would normally

3    probably not be involved in testing Oncor.  Why he

4    was this time, I don't know.

5    BY MR. CARITHERS:

6    Q       Apart from Ryder, would there be any other

7    fleet that would be the responsibility of the

8    corporate office?

9    A       Ruan.

10   Q       Why is Ruan?

11   A       Because we also have a major partnership

12   with them.

13             MR. MANLY:  Object to the form of the

14   question.

15   BY MR. CARITHERS:

16   Q       What kind of partnership do you have with

17   them?

18   A       We have a partnership with them where

19   basically we have a minimum 90 percent of their

20   business.

21   Q       Is that a criteria that makes a fleet part

22   of the corporate office, the percentage of their

23   business?

24             MR. MANLY:  Object to the form.

25             THE WITNESS:  No.

1    BY MR. CARITHERS:

2    Q        So how does that criteria make Ruan part

3    of the corporate office?

4                    MR. MANLY:  Object to the form.

5    Calls for speculation.

6                    THE WITNESS:  We deal with them

7    through our corporate office.

8    BY MR. CARITHERS:

9    Q        You don't know why?

10   A        Why?  Other than the fact that they are a

11   major large fleet and that we deal with them

12   through our corporate office.

13   Q        Is the similarities between Ruan and

14   Ryder, as both being part of the corporate office,

15   the size of the fleet?

16                    MR. MANLY:  Object to the form.

17                    THE WITNESS: _No.  There's a big

18   difference in the size of the fleets.

19   BY MR. CARITHERS:

20   Q        Okay.  You say Ruan is a major, or a

21   large -- major large fleet?

22   A        Okay.

23   Q        Is Ruan a major large fleet as compared to

24   Ryder?

25                    MR. MANLY:  Object to the form.

1              THE WITNESS:  They're not as large.

2    BY MR. CARITHERS:

3    Q       But they still are, your words, a major

4    large fleet?

5    A       Yeah.

6    Q       Any other -- did Ruan, to your knowledge,

7    evaluate or test Oncor tires?

8    A       I don't know that they have.

9    Q       Is Ruan and Ryder part of your national

10   accounts, fleets?

11   A       They are part of our national account

12   fleets, yes.

13   Q       Any other fleets that are part of the

14   corporate office?

15             MR. MANLY:  Object to the form.

16   BY MR. CARITHERS:

17   Q       Like Ryder and Ruan?

18   A       Yes.

19   Q       Who are they?

20   A       Waste Management.

21   Q       Any other fleet besides Waste Management,

22   Ruan and Ryder?

23   A       UPS.

24   Q       Any others?

25   A       That's about it.

1    Q       Both Waste Management and UPS are a part

2    of your national accounts?

3    A       Yes.

4    Q       Again, is the common criteria between

5    Waste Management, UPS, Ruan and Ryder size?

6                    MR. MANLY:  Object to the form.

7                    THE WITNESS:  Basically it has to do

8    in dealing with our corporate office.

9    BY MR. CARITHERS:

10   Q       Whose corporate office?

11   A       The fleet's corporate office.

12   Q       So Bridgestone's corporate office deals

13   with each of these respective fleets' corporate

14   office?

15   A       Yes.

16   Q       Do you know whether Waste Management or

17   UPS tested Oncor products?

18                   MR. MANLY:  Object to the form.

19                   THE WITNESS:  I don't know that they

20   have.  In fact, I'm sure that Waste Management

21   hasn't, because Waste Management is a waste

22   hauling fleet and they don't use the same size

23   tires that we cap up.  They might have a few

24   pieces of equipment that use it, but not very

25   many.

# Exhibit F

CONFIDENTIAL - ATTORNEYS EYES ONLY
William L. Barfield - 12/11/01

Page 1

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

BANDAG, INCORPORATED, an Iowa  ) CIVIL NO.

Corporation,                   ) 3-99-CV-80165
                               )
         Plaintiff,            )   CONFIDENTIAL
                               ) ATTORNEYS EYES
vs.                            )     ONLY
                               )
MICHELIN RETREAD TECHNOLOGIES, )
INCORPORATED, a Delaware       )
corporation, MICHELIN NORTH    )
AMERICA, INCORPORATED, a New York )    ORIGINAL
corporation; COMPAGNIE GENERALE )
DES ESTABLISSMENTS MICHELIN, a )
French corporation; and COMPAGNIE )
FINANCIERE MICHELIN, a Swiss   )
corporation,                   )
                               )
         Defendants.           )

                               )
MICHELIN RETREAD TECHNOLOGIES, )
INCORPORATED, and MICHELIN NORTH )
AMERICA, INCORPORATED,         )
                               )
         Counterclaimants,     )
                               )
vs.                            )
                               )
BANDAG, INCORPORATED, and      )
BRIDGESTONE/FIRESTONE, INC.,   )
                               )
         Counterdefendants.    )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPE DEPOSITION OF
WILLIAM L. BARFIELD

December 11, 2001
9:14 a.m.

Paul, Hastings, Janofsky & Walker, LLP
600 Peachtree Street, N.E., Suite 2400
Atlanta, Georgia

Wanda L. Robinson, CRR, CCR No. B-1973

CONFIDENTIAL - ATTORNEYS EYES ONLY
William L. Barfield - 12/11/01

Page 2

1    APPEARANCES OF COUNSEL

2
     On behalf of the Plaintiff and Counterdefendant
3    Bandag, Incorporation:

4         NAOMI B. GRAUBARD
          Attorney At Law
5         Wiggin & Dana
          400 Atlantic Street
6         P. O. Box 110325
          Stamford, Connecticut  06911-0325
7         (203) 363-7600

8
     Appearing on behalf of the Defendants and
9    Counterclaimants Michelin Retread Technologies,
     Incorporated and Michelin North America,
10   Incorporated:

11        THOMAS E. GILBERTSEN
          Attorney At Law
12        Collier Shannon Scott, PLLC
          3050 K Street, N.W., Suite 400
13        Washington, D.C.  20007-5108
          (202) 342-8617
14

15   Appearing on behalf of the Counterdefendant
     Bridgestone/Firestone, Inc.:
16
          MICHAEL P. MANLY
17        Attorney At Law
          Jones, Day, Reavis & Pogue
18        77 West Wacker Drive
          Chicago, Illinois  60601
19        (312) 269-4261

20   ALSO PRESENT:

21        Ben Kalala, Videographer

22                 INDEX OF EXAMINATIONS

23   EXAMINER                                    PAGE

24   By Mr. Manly                                   5
     By Ms. Graubard                              126
25   By Mr. Gilbertsen                            182

CONFIDENTIAL - ATTORNEYS EYES ONLY
William L. Barfield - 12/11/01

Page 3

1                          INDEX OF EXHIBITS

2

       BARFIELD:
3
       EXHIBIT NO.              DESCRIPTION                    PAGE
4

5          1        6/23/93 Bandag Meeting                      26

6          2        12 July 1993 Memorandum                     48
                    Barfield to Coudurier
7
           3        August 3, 1993 Memorandum                   57
8                   Clark/McCammmond to Coudurier

9          4        October 2000 MRTI Dealer Meeting            87
                    Agenda
10
           5        Evian 2000 Meeting                          96
11                  PowerPoint Presentation

12
           6        12/20/2000 E-mail                          100
13                  December 12, 2000 Market Weather
                    Report - PLNA November 2000
14
           7        June 19, 2000 Market Weather              119
15                  Report - PLNA May 2000

16         8        11/01/99 E-mail                            124
                    Handren to Barfield
17
           9        11/03/2000 E-mail Chain                    146
18                  Barfield to Von Waldner

19        10        11/16/2000 E-mail Chain                    150
                    Barfield to Menegaux
20

21        11        Michelins' Third Supplemental              166
                    Answers To Bridgestone/Firestone's
22                  First Set of Interrogatories To
                    Michelin
23

24

25

Great Lakes Shorthand (800) 234-2044

CONFIDENTIAL - ATTORNEYS EYES ONLY
William L. Barfield - 12/11/01

Page 120

1      A.    I believe it means that U.S. Xpress will

2   take more of the terminals to the MRT.

3      Q.    As of May of 2000, when this was

4   written, it appears to me that U.S. Xpress

5   purchased its first MRT retread right around this

6   time.  Is that correct?

7      A.    I don't know the answer to that.

8      Q.    Did U.S. Xpress first beginning -- first

9   begin purchasing MRT retreads in significant

10  numbers around May of 2000?

11     A.    I don't remember.

12     Q.    Could you tell me a little bit -- is

13  Ruan one of Michelin's strategic fleets?

14     A.    Yes, it is.

15     Q.    Could you tell me a little bit about

16  Ruan?

17     A.    Ruan is a leasing company, not that much

18  different than a Ryder or a Penske, out of the

19  Midwest.  Much smaller but it is a leasing company.

20     Q.    Does Ruan operate nationwide?

21     A.    Yes.

22     Q.    What is Michelin's new tire share with

23  Ruan currently?

24     A.    I don't know the percent.  I think it's

25  insignificant.  Small amount.  I don't know the

1   number.

2      Q.    What is Michelin's MRT share with Ruan

3   currently?

4      A.    Also a small amount, but I don't know

5   the number.

6      Q.    Was Bauer Built -- is Bauer Built the

7   dealer that is providing MRT retreads to Ruan?

8      A.    Bauer Built is providing MRT's to a

9   local -- one or small number of locations in the

10   Iowa area.  Nationally, they have an insignificant

11   part of the business.

12      Q.    Is MRT an approved product for Ruan

13   terminals to purchase?

14      A.    Yes.

15      Q.    Does Ruan -- is Ruan a company that

16   provides its terminals specific products that are

17   on an approved list?

18      A.    I don't know the specific rules they

19   have and what they have on their approved list, but

20   I know that the mandate to the field is they will

21   attempt to buy 90 percent of their product

22   Bridgestone.

23      Q.    Do you know who they purchase retreaded

24   tires from?

25      A.    It's predominantly Bandag.

Page 122

1      Q.    Do you have a person who reports to you

2   who is responsible for dealing with Ruan?

3      A.    Yes.

4      Q.    What is that person's name?

5      A.    John Lynch.

6      Q.    What, to your knowledge, does Mr. Lynch

7   do to attempt to generate more MRT business with

8   Ruan?

9      A.    Today, I think he does nothing

10   basically.

11      Q.    Can you list for me what are the five

12   biggest fleets in the country, to your best

13   knowledge.

14      A.    Now, this -- Michelin fleets?

15      Q.    Just the biggest fleets in the country,

16   to your knowledge?

17            MR. GILBERTSEN:  I just object to

18   vagueness in terms of bigness.  And can we get a

19   bigness in terms of revenues?  Numbers of tires

20   purchased?  Number of vehicles?  What?

21      Q.    Let's do it by tires purchased.

22      A.    I don't know that I'm the best, but I

23   would say that UPS is up there, Waste Management is

24   up there, Ryder, Penske.

25            How many is that?

# Exhibit G

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF IOWA
                         CENTRAL DIVISION


   BANDAG, INCORPORATED,      )
   an Iowa corporation,       )
                              )
          Plaintiff,          )  CASE NO. 3-99-CV-80165
                              )
          vs.                 )
                              )  VIDEOTAPED
   MICHELIN RETREAD           )  DEPOSITION OF
   TECHNOLOGIES, INC.,        )  MARTIN CARVER
   a Delaware corporation;    )
   and MICHELIN NORTH         )
   AMERICA, INC., a New       )
   York corporation;          )
   MICHELIN CORPORATION,      )  VOLUME II
   INC., a New York           )
   corporation; COMPAGNIE     )
   GENERALE DES               )
   ETABLISSEMENTS MICHELIN,)
   a French corporation;      )
   and COMPAGNIE FINANCIERE)
   MICHELIN, a Swiss          )
   corporation,               )
                              )
          Defendants.         )
   ------------------------)
   MICHELIN RETREAD           )
   TECHNOLOGIES, INC., and )
   MICHELIN NORTH AMERICA, )
   INC.,                      )
                              )
          Counterclaimants, )
                              )
          vs.                 )
                              )
   BANDAG, INC., and          )
   BRIDGESTONE/FIRESTONE,     )
   INC.,                      )
                              )
          Counterdefendants.)
   ------------------------)


   Reported by:  Tammy L. Isley-Guenther, C.S.R.
```

Page 242

1
2
3
4
5
6
7
8
9
10          THE VIDEOTAPED DEPOSITION OF MARTIN

11  CARVER, taken before Tammy L. Isley-Guenther,

12  Certified Shorthand Reporter and Notary Public

13  of the State of Iowa, commencing at 8:50 a.m.,

14  December 13, 2001, at 201 West Second Street,

15  Suite 900, Davenport, Iowa.

16
17
18
19
20
21
22
23
24
25

---

A P P E A R A N C E S (CONT'D)                          Pag

1
2  Michelin Retread
   Technologies, Inc.;
3  Michelin North
   America, Inc.; and
4  Michelin Corporation,
   Inc., by:          EMMET J. BONDURANT II
5                     Attorney at Law
                      Bondurant, Mixson & Elmore
6                     3900 One Atlantic Centre
                      1201 West Peachtree Street
7                     Atlanta, GA  30309

8                          and

9                     EDWARD W. REMSBURG
                      Attorney at Law
10                    Ahlers, Cooney, Dorweiler,
                      Haynie, Smith & Allbee
11                    100 Court Avenue
                      Suite 600
12                    Des Moines, IA  50309-2231

13  Bridgestone/
    Firestone, Inc.,
14  by:               JOSEPH P. SHEREDA
                      Attorney at Law
15                    Jones, Day, Reavis & Pogue
                      77 West Wacker Drive
16                    Suite 3500
                      Chicago, IL  60601
17
18
19
20
21
22
23
24
25

---

Page 243

1         A P P E A R A N C E S
2  Bandag, Inc.,
   by:
3                ANDREW GOLDMAN
                 Attorney at Law
4                Bartlit, Beck, Herman,
                 Palenchar & Scott
5                Courthouse Place
                 54 West Hubbard Street
6                Suite 300
                 Chicago, IL  60610
7
                     and
8
                 LISA J. McCRAW
9                Attorney at Law
                 Bandag, Incorporated
10               2905 North Highway 61
                 Muscatine, IA  52761-5886
11
                     and
12
                 RACHEL R. WATKINS SCHOENIG
13               Attorney at Law
                 Stanley, Lande & Hunter
14               301 Iowa Avenue
                 Suite 400
15               Muscatine, IA  52761
16
17
18
19
20
21
22
23
24
25

---

Page

1              I N D E X

2  Examination by:     Page

3  Mr. Bondurant     246

4
5
6
7

8  Exhibit             Marked/Offered

9  Carver Exhibit No. 4      246

10 Carver Exhibit No. 5      246

11 Carver Exhibit No. 6      288

12 Carver Exhibit No. 7      326

13
14
15
16
17
18
19
20
21
22
23
24
25

Page 258

1  at the moment.
2      Q. Is Canon a regional as distinguished
3  from a nationwide carrier?
4      A. Yes.
5      Q. Averitt Express?
6      A. Averitt.  Averitt is a Bandag national
7  account.
8      Q. Is Bandag the exclusive supplier of
9  retread to Averitt?
10     A. I'm not sure on that.
11     Q. American Freightways?
12     A. That one I'm not sure either.
13     Q. Is American Freightways a regional
14 carrier as distinguished from a nationwide
15 carrier?
16     A. I believe so.
17     Q. Martin Transportation?
18     A. I believe Martin is a Michelin
19 customer.
20     Q. Are they a regional carrier?
21     A. Yes.
22     Q. Ruan?
23     A. Ruan is a Bandag national account.
24     Q. Is Ruan a regional carrier?
25     A. It's a leasing company.

Page

1      Q. Is it a Bandag national account
2  customer?
3      A. No, it is not.
4      Q. Who is Crete's supplier, if you know?
5      A. Michelin.
6      Q. Is Bandag the exclusive supplier for
7  UPS?
8      A. No, sir.
9      Q. For who -- other competitors does UPS
10 also buy tires in some sections of the country?
11     A. Michelin -- excuse me, UPS buys from
12 Michelin, Goodyear, and Bandag.  There may be
13 others, but I couldn't tell you if there were.
14     Q. Are there any carriers included in the
15 3 percent referred to in your business plan who
16 are nationwide who are not Bandag retread
17 customers?
18         MR. GOLDMAN:  Objection to the
19 form.  Lacks foundation.  There's been no
20 evidence of who the 3 percent are,
21 Mr. Bondurant, so I don't see how the Witness
22 can identify names of those fleets.
23     Q. Can you answer the question?
24     A. Once again, I've stated several times
25 in testimony, but there is no list that this

Page 259

1      Q. Leasing company?
2      A. Yeah.  And I don't think they have
3  operations on the West Coast.
4      Q. Does Ruan buy retreads from Bandag
5  competitors?
6      A. Yes.
7      Q. Do you know what competitors?
8      A. Michelin.
9      Q. Do you know in what sections of the
10 country?
11     A. I know in Iowa they buy some from
12 Michelin, and I'm sure there's other -- there
13 are other areas where they buy from Michelin,
14 but I couldn't tell you specifically where those
15 were, sir.
16     Q. The last one you mentioned -- and we
17 may have not written it down correctly -- Prete?
18     A. Crete Carrier, C-r-e-t-e.
19     Q. Like the country?
20     A. Pardon?
21     Q. Like the island?
22     A. Yeah, but I don't think that's the
23 derivation.
24     Q. Is Crete a regional carrier?
25     A. I believe so, sir.

Page

1  3 percent is referring to.
2      Q. Are there any carriers that you
3  recognize as being nationwide and requiring
4  coast to coast coverage who are not Bandag
5  customers for retreading?
6         MR. GOLDMAN: Object to the form.
7  Lack of foundation.  Are you asking about --
8  that Bandag doesn't sell at all to or that
9  Bandag doesn't sell 100 percent to?
10         MR. BONDURANT: I think the
11 question can stand on its own.
12         (Requested portion of the record
13     was read.)
14         (Requested portion of the record
15     was read.)
16     A. I'm not sure I'm understanding what you
17 mean by "requiring coast to coast coverage."
18     Q. Would you read out loud again the first
19 sentence of your second amended complaint in
20 paragraph 18.
21     A. Coast to coast coverage is essential to
22 meaningful competition in the commercial tire
23 market.
24     Q. Now, coast to coast coverage as you,
25 Bandag, used in your second amended complaint

# Exhibit H

1           IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE SOUTHERN DISTRICT OF IOWA

3                      DAVENPORT DIVISION

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -

5    BANDAG, INCORPORATED, an
     Iowa corporation,
6                                        CONFIDENTIAL
                   Plaintiff,        ATTORNEYS' EYES ONLY
7
        -vs-                         Civil #3-99-CV-80165
8
     MICHELIN RETREAD TECHNOLOGIES,
9    INCORPORATED, a Delaware
     corporation, MICHELIN NORTH
10   AMERICA, INCORPORATED, a New York
     corporation, COMPAGNIE GENERALE
11   DES ESTABLISSMENTS MICHELIN, a        **CONFIDENTIAL**
     French corporation, and COMPAGNIE
12   FINANCIERE MICHELIN, a Swiss
     corporation,
13
                   Defendants.
14
     MICHELIN RETREAD TECHNOLOGIES,
15   INCORPORATED, and MICHELIN NORTH      **COPY**
     AMERICA, INCORPORATED,
16
                   Counterclaimants,
17
        -vs-
18
     BANDAG, INCORPORATED, and
19   BRIDGESTONE/FIRESTONE, INC.,

20                 Counterdefendants.
     - - - - - - - - - - - - - - - - - - - - - - - - - - - -
21            *      *      *      *      *

22              DEPOSITION OF PHIL MANZO,

23       TAKEN ON THE 20TH DAY OF DECEMBER, 2001.

24              EAU CLAIRE, WISCONSIN

25                   9:00 A.M.

APPEARANCES:

JAMES H. BICKS, of the firm of WIGGIN &

DANA, LLP, 400 Atlantic Street, P. O. Box 110325,

Stamford, Connecticut 06911-0325, appeared

representing the Plaintiff and Counderdefendant,

Bandag, Inc.

EDWARD W. REMSBURG, of the firm of AHLERS,

COONEY, DORWEILER, HAYNIE, SMITH & ALLBEE, 100

Court Avenue, Des Moines, Iowa 50309-2207,

appeared representing the Defendant, Michelin.

WILLIAM K. WHITNER, of the firm of PAUL,

HASTINGS, JANOFSKY & WALKER, LLP, 600 Peachtree

Street N.E., Suite 2400, Atlanta, Georgia

30308-2222, appeared presenting the Defendants and

Counterclaimants, Michelin Retread Technologies,

and Michelin North America.

MEGYN M. KENDALL, of the firm of JONES, DAY,

REAVIS & POGUE, 77 West Wacker, Chicago, Illinois

60601-1692, appeared representing the

Counterdefendant, Bridgestone/Firestone.

CAROL DITTMAR, of the firm of GARVEY,

ANDERSON, JOHNSON, GERACI & MIRR, 402 Graham

Avenue, Eau Claire, Wisconsin 54702, appeared on

behalf of Bauer Built.

```
 1                      I N D E X

 2     EXAMINATION                                    PAGE

 3     By Ms. Kendall                                    5
       By Mr. Bicks                                    220
 4     By Mr. Remsburg                                 298

 5

 6     OBJECTIONS
       By Mr. Remsburg         36,41,43,49,57,59,69,73,81,
 7                             84,85,90,125,126,127,160,
                               161,162,163,164,169,185,189,
 8                             202,205,206,207,210,217,223,
                               230,258,277,278,293,294,
 9     By Ms. Kendall          83,299
       By Mr. Bicks            299
10

11     EXHIBITS

12        1     Documents Bates No. MRT083814-MRT083816  17
          2     Document Bates No. MRT083805                 29
13        3     Documents Bates No. MRT034037-MRT034059  44
          4     Documents Bates No. MRT012823-MRT012827  75
14        5     Documents Bates No. MRT012874-MRT012877  86
          6     Documents Bates No. MRT012563-MRT012571  93
15        7     Documents Bates No. MRT064706-MRT064720  115
          8     8-15-96 memo from Manzo to Jamarik          166
16        9     Documents Bates No. MRT077696-MRT077705  176
         10     Documents Bates No. MRT037494-MRT037497  186
17       11     Documents Bates No. MRT130046-MRT130063  191
         12     Documents Bates No. MRT016200-MRT016201  199
18       13     Documents Bates No. MRT034179-MRT034183  226
         14     Printout from Bauer Built's website          240
19       15     Documents Bates No. MRT032236-MRT032238  249
         16     Documents Bates No. MRT009218-MRT009221  250
20       17     Documents Bates No. MRT03047-MRT03049    273
         18     Documents Bates No. Bauer01369-01381         285
21       19     Document Bates No. Bauer02059                285

22

23

24

25
```

|    |   |                                                           |
|----|---|-----------------------------------------------------------|
| 1  |   | fleets?                                                   |
| 2  | A | Let me see.  CRST.  You'd have to say Ruan is a           |
| 3  |   | national fleet.  I would say that Celadon, having         |
| 4  |   | only one other location, is not.  No, I wouldn't          |
| 5  |   | call them national fleets except for Ruan.  Having        |
| 6  |   | one or two other locations is not what I would            |
| 7  |   | consider to be a national fleet.                          |
| 8  | Q | So Ruan is the only national fleet that you --            |
| 9  | A | I would think so, yeah.                                   |
| 10 | Q | Does Bauer Built do any retreading for Allied             |
| 11 |   | Waste?                                                    |
| 12 | A | I would have to look that up.  Isn't Allied owned         |
| 13 |   | by Waste Management, or Waste Management owned by         |
| 14 |   | Allied?                                                   |
| 15 | Q | I'm not sure.  Do they do -- does Bauer Built do          |
| 16 |   | any retreading for Waste Management?                      |
| 17 | A | No.  That's why I was -- I think that's -- I think        |
| 18 |   | that's the case.  We may have when we had Bandag,         |
| 19 |   | but I think that Waste Management and Allied have         |
| 20 |   | an agreement with Bandag to only do Bandag for           |
| 21 |   | three years or whatever it is.                            |
| 22 | Q | What about for UPS?                                       |
| 23 | A | UPS?  We currently do not do any business with            |
| 24 |   | UPS.  We did do business with UPS out of                  |
| 25 |   | Indianapolis when we had Bandag.                          |

1   Q   And you're not doing any business with them now?

2   A   No.

3   Q   Do you know why?

4   A   Yes.  Because Michelin had not had the trailer

5       tire approved for UPS at the time that we went to

6       MRT retreading.

7   Q   So it was because UPS -- the MRT retread was not

8       approved by UPS?

9   A   The trailer tire wasn't approved.

10  Q   The trailer tire.

11  A   The drive tire and the other were, but the trailer

12      tire was not.

13  Q   Uh-huh.  Now, the fleets that you just listed as

14      some of your largest customers, were those also

15      customers of Bauer Built when they were a Bandag

16      retreader?

17  A   Marten was, Ruan was.  Celadon was not.  BMC was

18      not.  Who else did I give you on there?

19  Q   Dart.

20  A   Dart was not.  Dart was Goodyear, most recently.

21  Q   Burlington?

22  A   Burlington -- Burlington was not one of our Bandag

23      customers, but was a Bandag customer.

24  Q   So there are a number of fleets that Bauer Built

25      has done business with for the first time since it

1        switched to Michelin?

2   A   Celadon being probably for sure one.  And, you

3        know, that we were doing business with when we

4        were with Bandag?  We did some Ruan.  I would say

5        BMC increased quite a bit because we were doing

6        some, but not a whole lot.  Who is down there?

7        Munson, Marten, Dart -- no, Dart was with

8        Goodyear, I believe.  That's about it.  Probably

9        Celadon and Dart.

10   Q   Are fleets that you picked up who were not using

11        Bandag?

12   A   Well, to be exact, we had Dart with Bandag, lost

13        it when we had it with Bandag to Goodyear, and

14        then took it back away from Goodyear when we had

15        MRT, if that's makes any sense.

16   Q   Yes.

17   A   Okay.

18   Q   So you both retained a number of fleets that you

19        did have with Bandag, and you've also picked up

20        some additional fleets?

21   A   Yes.

22   Q   Are you doing any retreading for Penske?

23   A   No.

24   Q   How about Wal-Mart?

25   A   No.

# Exhibit I

P.02/49

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| BANDAG, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3-99-CV-80165 |
| | ) | |
| MICHELIN RETREAD | ) | |
| TECHNOLOGIES, INCORPORATED, | ) | THIRD PARTY DEFENDANT |
| AND MICHELIN NORTH AMERICA, | ) | BRIDGESTONE/FIRESTONE, |
| INCORPORATED | ) | INC.'S TRIAL WITNESS LIST |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MICHELIN RETREAD | ) | |
| TECHNOLOGIES, INCORPORATED, | ) | |
| AND MICHELIN NORTH AMERICA, | ) | |
| INCORPORATED | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANDAG, INC. | ) | |
| | ) | |
| Counterdefendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIDGESTONE/FIRESTONE, INC. | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## THIRD PARTY DEFENDANT BRIDGESTONE/FIRESTONE INC.'S TRIAL WITNESS LIST

Pursuant to the Court's case scheduling orders, third-party defendant

Bridgestone/Firestone Inc. ("BFS") may call one or more of the following persons as witnesses

at trial in its case-in-chief, either in person or by deposition:

CH-1311400v1

1    Singh Ahluwalia, BFS

2.   Glenn Atkinson, BFS

3.   Larry Bailey, Michelin North America, Inc.

4.   William Barfield, Michelin North America, Inc.

5.   Ralph Beaujard, LMFPM

6.   James Berlin, formerly with Tire Centers, Inc.

7.   Peter Bogatinoff, BFS

8.   David Bowen, Jack's Tire & Oil

9.   Thomas Brennan, Michelin North America, Inc.

10.  Roy Bromfield, Tire Centers, Inc.

11.  Art Campagnoni, BFS

12.  Martin Carver, Bandag, Inc.

13.  Tim Chen, Bandag, Inc.

14.  Randy Clark, Michelin North America, Inc.

15.  Earl Colvard, Boulevard Tire

16.  Thierry Coudurier, LMFPM

17.  Robert Davidson, formerly with Michelin North America, Inc.

18.  William Drake, McGriff Tire

19.  Dr. Thomas DuPont, $D^2$ Research

20.  Morris Erbesh, Inter-City Tire, Inc.

21.  Sam Ferrise, Bandag, Inc.

22.  Minekazu Fujimura, Bridgestone Corporation

23.  Bernard Gerardin, MFPM

24.  Roger Handren, Michelin North America, Inc.

25.  James Hay, Michelin Retread Technologies, Inc.

26.   Pam Jamarik, Michelin North America, Inc.

27.   John Lampe, BFS

28.   Dr. James Langenfeld, LECG, Inc.

29.   Neil Loughran, Bandag, Inc.

30.   Isaac Luna, formerly with Ryder Systems, Inc.

31.   Larry Malone, Consolidated Freightways, Inc.

32.   Joseph Malpede, Michelin North America, Inc.

33.   Phillip Manzo, formerly with Michelin North America, Inc.

34.   Steve Maxson, Averitt Express, Inc.

35.   John McErlane, Bandag, Inc.

36.   Dr. James T. McClave, InfoTech, Inc.

37.   Florent Menegaux, Michelin North America, Inc.

38.   John Meyers, WingFoot

39.   James Micali, Michelin North America, Inc.

40.   Dr. Almarin Phillips

41.   Ted Powell, Michelin North America, Inc.

42.   John Rice, Michelin North America, Inc.

43.   Andrew Sisler, Bandag, Inc.

44.   Richard Skinner, BFS

45.   John Snider, Snider Tire

46.   James Stankiewicz, Valley Tire, Inc.

47.   Roy Stogner, BFS

48.   Dave Stringer, formerly with Stringer Tire, Inc. and Tire Centers, Inc.

49.   Bob Sumerel, Bob Sumerel Tire Company

50.   Carl Tapp, P.A.M. Transport

51    Richard Tolotti, Jack's Tire & Oil

52.   Bernard Vasdeboncoeur, CEG

53.   David White, White Tire, Inc.

54.   Mark Winkler, Bandag, Inc.

55.   Bill Ziegler, Ziegler Tire, Inc

56.   Wendy Peel, or other witnesses from TransPerfect Translations, Inc., Chicago, Illinois

57.   Material witnesses who are identified through exhibits or documents produced untimely by Michelin

58.   Witnesses identified on any other party's Witness List

BFS reserves the right to call rebuttal witnesses, depending upon the evidence presented during either Bandag's or Michelin's cases.

BFS may call as trial witnesses, either in person or by previous testimony, any witness whose deposition has not yet been completed but will be completed prior to trial.

BFS reserves the right to supplement this witness list prior to trial.

CH-1211400v1                                              4

Dated: March 26, 2002

Respectfully submitted,

Martin H. Katz
Stephen T. Fieweger
Katz, Huntoon & Fieweger, PC
200 Plaza Office Building
1705 Second Avenue
P.O. Box 3250
Rock Island, IL 61204-3250
Telephone: (309) 788-5661
Facsimile: (309) 788-5688

ATTORNEYS FOR THIRD-PARTY
DEFENDANT BRIDGESTONE/FIRESTONE,
INC.

Counsel:

Thomas P. McNulty
Megyn M. Kendall
Michael P. Manly
JONES, DAY, REAVIS & POGUE
77 West Wacker
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the following attorneys of record herein at their respective addresses disclosed on the pleadings on the 26th day of March, 2002, by:

| | |
|---|---|
| Adam L. Hoeflich<br>Andrew Goldman<br>BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT<br>Courthouse Place<br>54 West Hubbard Street, Suite 300<br>Chicago, IL 60610<br>Fax: 312-494-4440 | Ronald T. Coleman, Jr.<br>PAUL, HASTINGS, JANOFSKY & WALKER LLP<br>600 Peachtree Street, Suite 2400<br>Atlanta, GA 30308<br>Fax: 404-815-2424 |
| Melinda F. Levitt<br>FOLEY & LARDNER<br>3000 K Street, NW<br>Washington, DC 20007<br>Fax: 202-672-5399 | David B. Fein<br>WIGGIN & DANA<br>Three Stamford Plaza<br>301 Tresser Blvd.<br>Stamford, CT 06911<br>Fax: 203-363-7676 |
| Edward W. Remsburg<br>AHLERS, CONNEY, DORWEILER, HAYNIE, SMITH & ALLBEE, P.C.<br>100 Court Avenue, Suite 600<br>Des Moines, IA 50309-2231<br>Fax: 515-243-2149 | David J. Meloy<br>STANLEY, LANDE & HUNTER<br>900 Firstar Center<br>201 West Second Street<br>Davenport, IA 52801<br>Fax: 319-263-8775 |
| Emmet J. Bondurant<br>BONDURANT, MIXSON & ELMORE, LLP<br>1201 W. Peachtree Street, NW<br>Suite 3900<br>Atlanta, GA 30309<br>Fax: 404-881-4111 | Thomas E. Gilbertsen<br>COLLIER SHANNON SCOTT, PLLC<br>3050 K Street, NW,<br>Suite 400<br>Washington, DC 20007<br>Fax: 202-342-8451 |
| James M. Brogan<br>Sean Fahey<br>PIPER MARBURY RUDNICK & WOLFE LLP<br>3400 Two Logan Square<br>18th & Arch Streets<br>Philadelphia, PA 19103-2762<br>Fax: 215-656-3301 | |
| [X]   U.S. Mail<br>[ ]   Federal Express | [X]   Fax<br>[ ]   UPS Next Day<br>[ ]   Other |

_____
Gregory S. Otsuka

CH-1199870v5

# Exhibit J

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

- - - - - - - - - - - - - - - -X
BANDAG, INC.,                     :
                                  :
          Plaintiff,              :
                                  :
     vs.                          :
                                  :
MICHELIN RETREAD TECHNOLOGIES,    :
INCORPORATED, AND MICHELIN        :
NORTH AMERICA, INCORPORATED,      :   Civil No. 3-99-cv-40165
                                  :
          Defendants.             :
- - - - - - - - - - - - - - - - -:
MICHELIN RETREAD TECHNOLOGIES,    :
INCORPORATED, AND MICHELIN        :
NORTH AMERICA, INCORPORATED,      :
                                  :
          Counterclaimants,       :
                                  :
     vs.                          :
                                  :
BANDAG, INCORPORATED,             :   TRANSCRIPT OF FINAL
                                  :   PRETRIAL CONFERENCE
          Counterdefendant,       :
                                  :
     and                          :
                                  :
BRIDGESTONE/FIRESTONE, INC.,      :
                                  :
          Counterdefendant.       :
- - - - - - - - - - - - - - - -X

                         Second Floor Courtroom
                         U.S. Courthouse
                         123 East Walnut Street
                         Des Moines, Iowa
                         Friday, April 26, 2002
                         1:30 p.m.

BEFORE:  THE HONORABLE THOMAS J. SHIELDS, Magistrate Judge, and
         THE HONORABLE JAMES E. GRITZNER, Judge.

                    TERRI L. MARTIN, CSR, RPR, CRR
                    United States Court Reporter
                    Suite 130, U.S. Courthouse
                    Des Moines, Iowa  50309

APPEARANCES:

| For Plaintiff and<br>Counterdefendant Bandag: | DONALD E. SCOTT, ESQ.<br>Bartlit, Beck, Herman,<br> Palencar & Scott<br>1899 Wynkoop Street, 8th Floor<br>Denver, Colorado  80202 |
|---|---|

ANDY GOLDMAN, ESQ.
Bartlit, Beck, Herman
 Palencar & Scott
Courthouse Place
54 West Hubbard Street, Suite

300

Chicago, Illinois  60610

RACHEL R. WATKINS SCHOENIG, ESQ.
Stanley, Lande & Hunter
900 Firstar Center
201 West Second Street
Davenport, Iowa  52801

| For Defendants and<br>Counterclaimants Michelin: | EDWARD W. REMSBURG, ESQ.<br>Ahlers, Cooney, Dorweiler,<br> Haynie, Smith & Allbee<br>100 Court Avenue, Suite 600<br>Des Moines, Iowa  50309-2231 |
|---|---|

THOMAS E. GILBERTSEN, ESQ.
Collier, Shannon & Scott
3050 K Street NW, Suite 400
Washington, D.C.  20007

EMMET J. BONDURANT, II, ESQ.
Bondurant, Mixson & Elmore
1201 West Peachtree Street
Suite 3900
Atlanta, Georgia  30309

RONALD T. COLEMAN, ESQ.
Paul, Hastings, Janofsky &
 Walker
600 Peachtree Street Northeast
Suite 2400
Atlanta, Georgia  30308

(Continued on next page)

3

```
For counterdefendant          THOMAS P. MCNULTY, ESQ.
Bridgestone/Firestone:        MEGYN M. KENDALL, ESQ.
                              Jones, Day, Reavis & Pogue
                              77 Wacker
                              Chicago, Illinois  60601-1692

                              TERENCE M. MURPHY, ESQ.
                              Jones, Day, Reavis & Pogue
                              2727 North Harwood Street
                              Dallas, Texas  65201-1515

                              MARICLARE THINNES CULVER, ESQ.
                              Duncan, Green, Brown,
                               Langeness & Eckley
                              400 Locust Street, Suite 380
                              Des Moines, Iowa  50309-2331

For CGEM & CFM:               DAVID L. PHIPPS, ESQ.
                              Whitfield & Eddy
                              317 Sixth Avenue, Suite 1200
                              Des Moines, Iowa  50309-4195
```

4

```
 1                    P R O C E E D I N G S
 2            (In open court.)
 3            JUDGE SHIELDS:  We'll go on the record, and this is
 4   the final pretrial conference in Case No. 3-99-cv-40165.  I
 5   probably ought to renumber it to four because it's not
 6   necessarily a Davenport case anymore, but we'll leave that
 7   appellation.
 8            We're here for final pretrial conference and all
 9   parties are present.  I don't know if counsel -- why don't you
10   just for Ms. Martin, let them know who's here.
11            You know?
12            THE COURT REPORTER:  Yes.
13            JUDGE SHIELDS:  That's fine.  I thought she knew
14   everybody, but I wasn't going to assume that.
15            I will state for the record that I have received a
16   proposed final pretrial order.  I received that yesterday.  I'm
17   going to talk about that document in a moment, and I think
18   there were other filings that were made today and some
19   attachments, I suspect.  Also I would note that as requested I
20   have received on disk Bandag and Bridgestone/Firestone's
21   proposed verdict forms, jury instructions, and preliminary jury
22   instructions and proposed jury instructions from the Michelin
23   defendants, and I'm assuming that this includes CGEM and CFM.
24            MR. COLEMAN:  That's right, Judge.
25            JUDGE SHIELDS:  Also I would note for the record that
```

1          MR. BONDURANT:  Our judgment remains six to eight

2     weeks, Your Honor.

3          JUDGE SHIELDS:  Bridgestone?

4          MR. MURPHY:  Much of this case doesn't involve us,

5     so --

6          JUDGE SHIELDS:  Wishful thinking, Mr. Murphy, but --

7          MR. MURPHY:  No, I mean Bandag's affirmative case and

8     two out of the three claims that's being asserted by Michelin

9     don't involve us, so we could put our case on in less than a

10    week.  So whatever their estimate is, we would have to go along

11    with it.

12         JUDGE SHIELDS:  And CGEM?

13         MR. PHIPPS:  I would go with Michelin's estimate.

14         JUDGE SHIELDS:  I think you've gotten your witnesses,

15    as I recall, from our discussions pretty well identified.  I'm

16    presuming nobody is telling me now there are any surprise

17    witnesses, somebody that's popped up that we haven't discussed

18    who hasn't been the subject of the late depositions?

19         MR. COLEMAN:  We got that worked out.

20         JUDGE SHIELDS:  Okay.  Same true for the exhibits?

21         MR. COLEMAN:  We are still in the -- speaking for

22    Michelin defendants and counterclaimants, Your Honor, we are

23    still in the process of reviewing the exhibit list.  I will

24    note we got an amended exhibit list from Bridgestone that

25    appears to add some documents that, frankly, we're still in the

# Exhibit K

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

FILED
DES MOINES, IOWA
02 APR 16 PM 2:32

SOUTHERN DISTRICT OF IA

| | | |
|---|---|---|
| BANDAG, INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 3-99-CV-80165 |
| vs. | ) | |
| | ) | |
| MICHELIN RETREAD TECHNOLOGIES, INCORPORATED, a Delaware | ) | RULINGS AND ORDER |
| Corporation; MICHELIN NORTH AMERICA, INCORPORATED, a New York Corporation; MICHELIN CORPORATION, a New York corporation; COMPAGNIE GENERALE DES ETABLISSEMENTS MICHELIN, a French corporation; and COMPAGNIE FINANCIERE MICHELIN, a Swiss corporation, | ) | |
| Defendants. | ) | |
| | ) | |
| MICHELIN RETREAD TECHNOLOGIES, INCORPORATED, and MICHELIN NORTH AMERICA, INCORPORATED, | ) | |
| Counterclaimants, | ) | |
| vs. | ) | |
| BANDAG, INC. | ) | |
| Counterdefendant, | ) | |
| and | ) | |
| BRIDGESTONE/FIRESTONE, INC. | ) | |
| Counterdefendant. | ) | |

The undersigned judge, a Senior United States District Judge, has worked with United States Magistrate Judge Thomas J.

1

Shields for the past three years in managing this case and preparing it for trial or other disposition.  Now, I issue these pretrial rulings, set the time and place for trial, and transfer this case to United States District Judge James E. Gritzner, my successor in office.[1]

On March 29, 2002, the court received a full day of oral arguments of counsel on the resisted cross motions for summary judgment that had been fully briefed.  Counsel also has presented arguments on the Michelin parties' resisted motion to transfer venue to a different division or district.  The parties were allowed to file additional briefs and other papers on these motions.  Now, all of these issues are ready for rulings.

I.  For reasons that follow, the court denies all resisted cross-motions for summary judgment.[2]

II.  Trial will be held at the United States Courthouse in Des Moines.  The court schedules trial to begin with jury selection on Monday, May 6, 2002, followed by a hearing at 8:30 a.m. on Tuesday, May 7 on so-called Daubert issues[3] and all motions in limine.  The jury will be given a schedule setting

---

[1] Judge Gritzner has reviewed and agrees with the provisions of this Order scheduling trial during the several weeks beginning May 6, 2002.

[2] On this date, the court has granted Bandag's unresisted motion to dismiss voluntarily its misappropriation of trade secrets claim.

[3] See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).

hours of trial each day and the days for trial each week,[4] with Monday, May 13, 2002 the likely day for opening statements and presentation of evidence.  A final pretrial conference has already been scheduled by Magistrate Judge Shields in Des Moines commencing at 1:30 p.m. on April 26, 2002.

III.   The court reassigns this case to United States District Judge James E. Gritzner for all further proceedings - including the motion for permission to collect polling data - subject to any orders Judge Gritzner may enter referring other matters to Magistrate Judge Shields or other judges of this court.

IV.   The court directs the parties to hold early meaningful settlement conferences with a judge of this court or, as indicated during the March 29 hearing, a private mediation specialist such as Richard Calkins of Des Moines, Iowa.  The parties shall respect a final settlement deadline of May 1, 2002. By Noon on that date, plaintiff's counsel shall inform Judge Gritzner by phone and faxed letter whether the case has been settled or requires trial.

## DISCUSSION

Now that I have completed my review of the extensive summary judgment record and excellent briefs of the parties, I conclude that no party is entitled to summary judgment on any

---

[4]   The parties are aware that Judge Gritzner will be out of the district during the period of June 17 through June 21, during which time trial will be adjourned.

issue.  Granted the United States Supreme Court has directed
district courts to analyze carefully whether complex issues in
antitrust and other commercial lawsuits really require trial.[5]
But here I conclude that fact issues abound on every claim and
defense asserted by the parties.

A.   Standard for Summary Judgment

The court must grant summary judgment if, upon viewing
the evidence in the light most favorable to the nonmoving party,
the court determines that no genuine issue of material fact
exists and that the moving party is entitled to judgment as a
matter of law.  FED R. CIV. P. 56(c); Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986); Lefler v. Gen. Casualty Co. of Wisc.,
260 F.3d 942, 944 (8th Cir. 2001).  See also Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986) ("Summary judgment will not
lie if the dispute about a material fact is 'genuine,' that is,
if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.").

To overcome summary judgment as to its claim based on
Section 1 of the Sherman Act, Michelin must proffer evidence that
"tends to exclude the possibility" that Bandag and
Bridgestone/Firestone (BFS) acted independently.  Matsushita, 475
U.S. at 588 (citing Monsanto Co. v. Spray-Rite Serv. Corp., 465
U.S. 752, 764 (1984)).  Further, with respect to its allegation
of a conspiracy between Bandag and BFS, Michelin must "establish

---

[5]  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 586-88 (1986).

4

that there is a genuine issue of material fact as to whether
[Bandag and BFS] entered into an illegal conspiracy that caused
[Michelin] to suffer a cognizable injury." Matsushita, 475 U.S.
at 585-86 (citing FED. R. CIV. PROC. 56(e); First Nat'l Bank of
Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).

B.   Bandag and BFS Motions

Bandag and BFS contend that Michelin's counterclaims
must fail for two reasons in particular.  First, Bandag and BFS
argue that Michelin cannot establish an "antitrust injury" for
its Sherman Act claims, and therefore lacks standing.  15 U.S.C.
§§ 1, 2 (2001).  Bandag and BFS claim that even if Michelin could
prove that BFS unlawfully agreed not to enter into the retread
tire market and compete with Bandag, that Michelin would actually
benefit from the reduction in competition.  Section 4 of the
Clayton Act governs standing in antitrust actions, providing that
"any person who shall be injured in his business or property by
reason of anything forbidden in the antitrust laws may sue in any
district court of the United States."  15 U.S.C. § 15(a).

Michelin must show, therefore, that it sustained an
"injury of the type that the antitrust laws were intended to
prevent and that flows from that which makes [Bandag and BFS's]
acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429
U.S. 477, 489 (1977).  In other words, the injury "should reflect
the anticompetitive effect ... of the violation" and must be
"'the type of loss that the claimed violations ... would be
likely to cause.'" Blue Shield of Virginia v. McCready, 457 U.S.

5

465, 482 (1982) (citing Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 125 (1969)).

Second, Bandag and BFS claim that they never entered into an unlawful conspiracy to allocate markets between them. Specifically, Bandag and BFS contend that BFS based its Oncor retreading decisions on its independent business judgment, and not on any agreement to promote cooperation with Bandag. Further, Bandag and BFS argue that Michelin has not proved that Bandag and BFS are horizontal competitors in any of the markets at issue.

As set forth in Matsushita, Michelin must show that it sustained a cognizable injury resulting from a conspiracy in violation of the Sherman Act. Matsushita, 475 U.S. at 586. Michelin must also present "'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citing FED. R. CIV. PROC. 56(c), (e)). Here, Michelin alleges that Bandag and BFS have conspired to restrain and exclude competition in the retread tire market through Bandag's strict exclusive dealing provisions in their franchise agreements coupled with the money BFS paid its dealers to enter into such agreements with Bandag. Essentially, Michelin claims that the alleged conspiracy between Bandag and BFS has precluded it from establishing coast-to-coast coverage to be able to compete with Bandag and BFS for national fleet accounts.

The court denies Bandag's and BFS's motions for summary judgment because significant genuine fact issues remain for trial

6

as to many material issues, including and especially the following:

(1)   whether Bandag and BFS compete in the retread tire market;

(2)   whether Bandag and BFS agreed to limit competition between themselves in the retread market and worked in concert to exclude other competitive retreading systems;

(3)   whether the alleged concerted action was for the purpose and had the effect of reducing retreading alternatives available to the consumer trucking fleets; and

(4)   whether Michelin incurred the requisite antitrust injury so as to establish standing to pursue its counterclaim.

While Michelin has not presented particularly strong proof of damages or proof of the alleged Sherman Act violations, Michelin might nevertheless prevail at trial if the facts found by the jury are those suggested by its evidence.  Denial of summary judgment on the Sherman Act issues is in line with decisions of the United States Court of Appeals for the Eighth Circuit as well as other circuits.  See, e.g., Worthen Bank & Trust v. Nat'l Bankamericard, Inc., 485 F.2d 119, 124 (8th Cir. 1973) ("The term 'group boycott' ... is in reality a very broad label for divergent types of concerted activity."); Smith v. Pro Football, Inc., 593 F.2d 1173, 1179-80 (D.C. Cir. 1979) ("The 'group boycott' designation, we believe, is properly restricted to concerted attempts by competitors to exclude horizontal competitors.").

C.  Michelin's Motions

Michelin contends that it is entitled to summary judgment on each of Bandag's pleaded causes of action.  For the reasons that follow, the court denies Michelin's motion as to all remaining pleaded causes of action.

With respect to Bandag's unfair competition state law claim, Michelin argues that the acts that Bandag alleges do not constitute unfair competition and that there is no evidence to support the claim that Michelin competed unfairly.  The court is not convinced that Iowa courts have limited the tort of unfair competition to "palming off" cases as Michelin suggests.  The doctrine of unfair competition aims to protect the "public whose rights are interfered with by the confusion of goods *as well as* upon the right of a complainant to enjoy the good will of a trade built up through his efforts or possessed by him and sought to be jeopardized by unfair and dishonest competition."  Roggensack v. Winona Monument Co., 233 N.W. 494 (1930) (citing Sartor v. Schaden, 101 N.W. 511 (1904)).  The court finds that genuine issues of material fact remain for trial as to this cause of action

The parties also dispute material facts as to Bandag's two tortious interference claims - i.e., tortious interference with Bandag's existing franchise agreements and with Bandag's prospective business relations with its franchisees.  While Michelin's estoppel defense may prove to have merit at trial, the court is convinced that Bandag has proffered sufficient evidence

that, if true, would establish a successful claim for both tortious interference claims.  On this record, genuine issues of material fact include whether Michelin interfered with prospective business relationships and existing contracts and, if so, whether they did so intentionally.

The court also denies summary judgment as to Bandag's claim of unjust enrichment and entitlement to punitive damages. Bandag's facts, if found true at trial, would satisfy the requisite elements for each of these claims.

### CONCLUSION

In short, even as to Michelin's borderline Sherman Act claims, the briefs and oral arguments supporting summary judgment are overpowered by the briefs and oral arguments in resistance.

IT IS SO ORDERED.

This 16$^{th}$ day of April, 2002.

*Charles R. Wolle*

CHARLES R. WOLLE, JUDGE
UNITED STATES DISTRICT COURT

9